JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
MICHAEL G. D'ALBA (State Bar No. 264403)
*mdalba@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Proposed Attorneys for Airport Van Rental, Inc.
and affiliated Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re<br><br>AIRPORT VAN RENTAL, INC., et al.,<br><br>      Debtors and Debtors in Possession.<br><br>☒   Affects all Debtors<br>☐   Affects the following Debtor(s): | Case No. 2:20-bk-20876-BB<br><br>Chapter 11<br><br>**MOTION FOR ENTRY OF AN ORDER OF JOINT ADMINISTRATION;[1] AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[No notice or hearing required]**<br>**[LBR 1015-1]** |
|---|---|

Airport Van Rental, Inc., a California corporation ("AVR California"), hereby moves for an order jointly administering this case with chapter 11 cases filed by the following affiliates: Airport Van Rental, Inc., a Georgia corporation ("AVR Georgia"), case no. 2:20-bk-20877-BB; Airport Van Rental, Inc., a Nevada corporation ("AVR Nevada"), case no. 2:20-bk-20878-BB; Airport Van Rental, LLP, a Texas limited liability partnership ("AVR Texas"), case no. 2:20-bk-20882-BB;

---

[1] Concurrently with the filing of this motion by Airport Van Rental, Inc., a California corporation, four of its affiliates have also filed motions in their respective chapter 11 cases for orders directing the joint administration of their cases and that of Airport Van Rental, Inc., a California corporation.

1627876.2  26982                    1

and (4) AVR Vanpool, Inc., a California corporation, case no. 2:20-bk-20883-BB ("AVR Vanpool").  AVR California, AVR Georgia, AVR Nevada, AVR Texas, and AVR Vanpool are collectively referred to herein as the "Debtors."

This motion is based on the following grounds:  On December 11, 2020, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the above-referenced Bankruptcy Court.  FRBP 1015 provides that the court may order a joint administration of the bankruptcy estates where two or more petitions are pending in the same court by a debtor and an affiliate.

This motion is based upon this motion, the Memorandum of Points and Authorities appended hereto, the separate Declaration of Yazdan Irani and the separate Appendix of Exhibits filed concurrently herewith, the separate notice of the hearing on this and other first day motions, and such other evidence as may be presented to the Court.

The Motion is brought pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 1015 Local Bankruptcy Rule ("LBR") 1015-1(b).  Pursuant to LBR 1015-1(b) and LBR 9013-1(q), this Motion may be determined without a hearing and without additional notice.

DATED:  December 11, 2020             DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:     */s/ John N. Tedford, IV*
          JOHN N. TEDFORD, IV
          Proposed Attorneys for Airport Van Rental, Inc.
          and affiliated Debtors and Debtors in Possession

1627876.2  26982                                    2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**BACKGROUND FACTS**

**A.    BANKRUPTCY BACKGROUND**

On December 11, 2020 (the "Petition Date"), Airport Van Rental, Inc., a California corporation ("AVR California"), Airport Van Rental, Inc., a Georgia corporation, Airport Van Rental, Inc., a Nevada corporation, Airport Van Rental, LLP, a Texas limited liability partnership, and AVR Vanpool, Inc., a California corporation ("AVR Vanpool") (collectively the "Debtors"), each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have filed a number of motions seeking typical "first day" orders, including an order directing the joint administration of their chapter 11 cases.  The Debtors remain in possession of their properties and continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    THE DEBTORS' HISTORY AND BUSINESS OPERATIONS**

AVR California was founded in 2007 by Yazdan and Kim Irani.  The Iranis founded AVR California because they recognized that car rental companies do not adequately serve the needs of customers who need space for five or more passengers.  Over the last 13 years, the Iranis built the Company (consisting of the five Debtors and some non-Debtors that are no longer operating) into an industry leader in the van rental business in the United States.  The Company also continued to innovate by providing full-service "vanpool" programs to governmental agencies such as the City of Los Angeles.

Very generally, the Company's business has three components.  *First*, the Company rents vans to the public.  The Company has an online reservation system at www.airportvanrentals.com and accepts bookings through online travel agencies such as Priceline.com.  This first component is referred to as its "retail" business.  *Second*, the Company has contracts with private businesses that need to rent vans to conduct their business.  The Company has been recognized by Amazon as a

National Recognized Preferred Vendor in connection with Amazon's "Delivery Service Partner" program.[2] *Third*, the Company has "vanpool" contracts with governmental entities pursuant to which it supplies and maintains vans used by government employees as part of environmentally-friendly vanpool programs.

From $3.8 million in 2011, the Company's revenues grew to $39 million in 2019. The Company was poised to continue growing until the COVID-19 pandemic took hold, devastating the retail business which comprised 85% of its revenues in 2019. The Company, which used to operate in 16 cities in 10 states, now operates in 7 cities in 5 states. In early 2020, the Company had over 210 employees throughout the United States; today, it has approximately 60. Like other car rental companies, the Company also cut the size of its fleet, from approximately 2,300 vehicles to 1,100. Car rental companies cut their fleet size by selling their vehicles through auction. Because of the large number of vehicles being offered for sale and the few number of vehicles being purchased, the market value of used passenger vehicles dropped. Since the Company is liable to its vehicle financiers for the full acquisition price of a vehicle regardless of how much that vehicle sells for – even if the vehicle is "leased" from the financier – the Company bore the brunt of the decrease in market values.

Like Hertz and many other companies that rely heavily on air travelers, the Debtors find themselves in need of bankruptcy relief. A number of the Company's financiers (including some who are exiting the industry) are pursuing or are threatening to pursue their rights under existing financing arrangements. The Company has been open with them regarding the Company's need for bankruptcy relief, and even told them when a chapter 11 would be filed. The Company hired outside professionals, including a Chief Reorganization Advisor, to evaluate the prospects for the Debtors' reorganization or potential sale of their assets (or some of their assets). In October 2020, the Debtor implemented an "Adequate Protection Program" pursuant to which all financiers have

---

[2] Under the program, delivery persons form small businesses and contract to deliver Amazon packages in Prime-branded blue vans and uniforms. Amazon negotiated special deals on van leases with companies such as AVR California, and requires its DSPs to use preferred vendors. The Company is currently renting approximately 200 vans to Amazon DSPs.

1  received monthly payments to (a) compensate them for the decrease in value of their collateral,
2  (b) provide interest, at a rate of 6.0% per annum, based on current market values of the vehicles in
3  which they have an interest, and (c) remit proceeds from sales of the vehicles in which they had an
4  interest.  In October and November 2020, the Company paid financing companies an aggregate of
5  approximately $420,000 to compensate them for the decrease in value of the vehicles, $200,000 of
6  interest, and $1.5 million from the sales of vehicles.

7

8  **C.    THE DEBTORS' PLAN FOR THIS CASE**

9       Presently, the Debtors intend to sell certain assets, and assign certain liabilities, to a new
10 company that has been or will be formed by certain of the Company's current officers.  Any sale
11 will be subject to Court approval, and likely subject to overbids.
12      The Debtors remain open to the possibility of a chapter 11 plan that, among other things,
13 (a) consolidates the Debtors (and possibly some non-Debtors) into one entity, (b) pays the Debtors'
14 financing companies the full amount of the secured portion of their claims during the same period
15 of time those claims would be paid in the ordinary course of business, and (c) uses future earnings
16 to make distributions to general unsecured creditors over a period of years.  However, absent a
17 major source of new funding, such a plan would require cooperation by substantially all of the
18 financing companies and the consent of unsecured creditors.
19      To accomplish an orderly liquidation or confirmation of a chapter 11 plan, the Debtors
20 intend to, among other things (a) continue to operate and maintain their business and the assets,
21 including the fleets of vehicles in which the financing companies have an interest, (b) continue to
22 make adequate protection payments to the financing companies in accordance with the Adequate
23 Protection Program and (c) continue to sell vehicles in the ordinary course and pay the net sales
24 proceeds to the financing companies.
25 ///
26 ///
27 ///
28 ///

## II.

## ADDITIONAL FACTS SPECIFIC TO RELIEF REQUESTED

Each of the Debtors is an "affiliate" of the other Debtors because its founder, Yazdan Irani, owns 20% or more of the outstanding voting securities of each Debtor.

In most respects, the Company operates like a consolidated entity. The majority of the Company's business is conducted by AVR California. All revenue generated by the Company is deposited into accounts held in the name of AVR California, and all expenses incurred by the Company are paid by AVR California out of those accounts. In this way, the Company employs a cash management system in which all income is pooled together to pay the entities' collective expenses. Like all of their other expenses, the payroll of the Debtors' employees is funded by AVR California, primarily from revenues generated by AVR California.

## III.

## LEGAL DISCUSSION

**A.    RELIEF REQUESTED**

Each of the Debtors is seeking an order approving the joint administration of the Debtors' bankruptcy estates. AVR California also seeks an order approving the following procedures (the "Administration Procedures"):

1. Use of one docket for the Debtors' bankruptcy cases under the lead case number assigned to AVR California;

2. The caption of all pleadings, orders, and other papers filed shall reflect joint administration of the Debtors' cases by stating whether all Debtors are affected or otherwise identifying the affected Debtor(s) by name;

3. Each of the Debtors shall file separate schedules and statements;

4. Proofs of claim filed by creditors of any of the Debtors shall be on the caption and case number of the Debtor or Debtors to which the claim relates and in whose case or cases the claim is to be filed;

5. A separate claim register shall be kept for each of the Debtors;

6.    While substantive consolidation[3] is not requested, one plan and disclosure statement may be filed for all of the Debtors' cases;

7.    The Debtors shall be authorized to file monthly operating reports required by the U.S. Trustee on a consolidated basis in a form acceptable to the U.S. Trustee; and

8.    Whenever applicable bankruptcy rules might require service on the top twenty general unsecured creditors, parties shall instead be required to serve a consolidated list of the top twenty general unsecured creditors of the Debtors' bankruptcy estates, as set forth in Exhibit "5" to the Appendix of Exhibits.

**B.    <u>BASIS FOR RELIEF REQUESTED</u>**

FRBP 1015 provides, in pertinent part:

> (b) Cases involving two or more related debtors
>
> If . . . two or more petitions are pending in the same court by . . .
>
> (4) a debtor and an affiliate, the court may order a joint administration of the estates. Prior to entering an order the court shall give consideration to protecting creditors of different estates against potential conflicts of interest.
>
> (c) Expediting and protective orders
>
> When an order for . . . joint administration of . . . two or more cases is entered pursuant to this rule, while protecting the rights of the parties under the Code, the court may enter orders as may tend to avoid unnecessary costs and delay.

LBR 1015-1(b) further provides:

> (1) Motion.   If 2 or more cases are pending before the same judge, an order of joint administration may be entered, without further notice and an opportunity for hearing, upon the filing of a motion for joint administration pursuant to FRBP 1015 and LBR 9013-1(q), supported by a declaration establishing that the joint administration of the cases is warranted, will ease the administrative burden for the court and the parties, and will protect creditors of the different estates against potential conflicts of interest.

The Motion is supported by the separately filed declaration of Yazdan Irani.

---

[3] <u>See</u> <u>also</u> LBR 1015-1(b)(2).

### C. **AN ORDER OF JOINT ADMINISTRATION IS WARRANTED**

#### 1. Affiliate Status

Section 101(2)(B) of the Bankruptcy Code defines the term "affiliate" as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly . . . owned . . . by an entity that directly or indirectly . . . owns . . . 20 percent or more of the outstanding voting securities of the debtor . . . ." AVR Texas qualifies as a "corporation" under Section 101(9) of the Bankruptcy Code because it is "organized under a law that makes only the capital subscribed responsible for the debts of such association."[4] As discussed above, each of the Debtors is an affiliate of the others.

#### 2. Administrative burden

The fact that the Debtors are affiliates of one another provides a sufficient basis for their cases to be jointly administered. Joint administration is also appropriate because it will eliminate duplicative efforts that would waste the resources of the bankruptcy estates and the Court. Otherwise, the Debtors will be burdened with having to file substantially the exact same pleading in each of the chapter 11 cases when seeking certain forms of relief. This would cause the Debtors to incur substantial and unnecessary legal fees and expenses, as well as delay. LBR 1015-1 provides for joint administration where it will ease the administrative burden for the Court and the parties. The Debtors' cases warrant such relief. In addition to reducing the costs and delay for the bankruptcy estates of the Debtors, such relief will reduce the costs and delay to the Court, creditors, and other parties in interest.

The Debtors believe that there are no potential conflicts of interest among the creditors of the different Debtors such that joint administration should not be allowed. Should one arise, the Court has discretion under FRBP 1015-1(c) to modify its order.

---

[4] AVR Texas is a limited liability partnership organized under Texas law. A partner in a Texas limited liability partnership is not liable for any obligation of the partnership. Business Organizations Code, Sec. 152.801(a). This restriction, however, does not affect the liability of the limited liability partnership to pay its obligations from partnership property. Business Organizations Code, Sec. 152.801(d)(1).

## IV.

## NOTICE GIVEN

This motion and other first day motions, and notice of the hearings thereon, will be served by overnight mail on the Office of the United States Trustee, entities with interest in cash collateral to be used by the Debtors, and other creditors appearing on the Debtors' list of 20 largest unsecured creditors.  However, pursuant to LBR 1015-1(b), an order of joint administration may be entered, without further notice and an opportunity for hearing, upon the filing of a motion.  Therefore, the Debtors request that this motion be granted without need for a hearing or any further notice.

## V.

## CONCLUSION

For the foregoing reasons, the Debtors request that the Court enter an order approving the joint administration of the Debtors' cases as well as the proposed procedures.  The Debtors also request such other and further relief as the Court deems just and proper.

DATED:  December 11, 2020         DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:    */s/ John N. Tedford, IV*
JOHN N. TEDFORD, IV
Proposed Attorneys for Airport Van Rental, Inc. and affiliated Debtors and Debtors in Possession

1627876.2  26982

7