1    JOHN N. TEDFORD, IV (State Bar No. 205537)
     *jtedford@DanningGill.com*
2    ZEV SHECHTMAN (State Bar No. 266280)
     *zs@DanningGill.com*
3    MICHAEL G. D'ALBA (State Bar No. 264403)
     *mdalba@DanningGill.com*
4    DANNING, GILL, ISRAEL & KRASNOFF, LLP
     1901 Avenue of the Stars, Suite 450
5    Los Angeles, California 90067-6006
     Telephone: (310) 277-0077
6    Facsimile: (310) 277-5735

7    Proposed Attorneys for Airport Van Rental, Inc.
     and affiliated Debtors and Debtors in Possession

8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                        **LOS ANGELES DIVISION**

12

13   In re                                    Case No. 2:20-bk-20876-BB

14   AIRPORT VAN RENTAL, INC., et al.,[1]      Chapter 11

15              Debtors and Debtors in         **NOTICE OF APPLICATION AND**
                Possession.                     **APPLICATION OF DEBTORS AND**
16                                              **DEBTORS-IN-POSSESSION TO**
                                                **EMPLOY CSA PARTNERS LLC, AS**
17   ☒    Affects all Debtors                   **THEIR FINANCIAL CONSULTANT;**
                                                **AND STATEMENT OF**
18   ☐    Affects the following Debtor(s):      **DISINTERESTEDNESS**

19                                              [No Hearing Required]

20

21   **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE**

22   **AND PARTIES IN INTEREST:**

23          **PLEASE TAKE NOTICE** Airport Van Rental, Inc., a California corporation ("AVR

24   California" or the "Company"), and its four affiliated debtors and debtors in possession

25

26          [1] Pursuant to an order of the Court, this case is being jointly administered with four chapter 11 cases filed by
     affiliated entities.  Such entities are Airport Van Rental, Inc., a Georgia corporation, case no. 2:20-bk-20877-BB;
27   Airport Van Rental, Inc., a Nevada corporation, case no. 2:20-bk-20878-BB; Airport Van Rental, LLP, a Texas limited
     liability partnership, case no. 2:20-bk-20882-BB; and AVR Vanpool, Inc., a California corporation, case no. 2:20-bk-
28   20883-BB.

                                               1

1  (collectively the "Debtors"), hereby apply (the "Application") for entry of an order under 11 U.S.C.

2  § 327(a) authorizing the Debtors to employ CSA Partners, LLC ("CSA") as their Financial

3  Consultant, effective as of December 11, 2020 (the "Petition Date").  In compliance with Local

4  Bankruptcy Rule ("LBR") 2014-1(b)(3), the Debtors hereby provide the following information

5  regarding the Application:

6

7  A.    Identity of professional and the purpose and scope for which it is being employed

8            On or about September 20, 2020, pursuant to an engagement agreement (the "Agreement"),

9  the Debtors retained CSA to provide financial restructuring services.  Given the important

10  leadership role CSA has played to date in improving the Debtors accounting processes and

11  preparing for these bankruptcy filings, and the need for professional accounting and financial

12  services during the pendency of these cases, the Debtors believe it is essential that CSA stay on and

13  be retained as the Debtors' Financial Consultant.  Thus, The Debtors seek to retain CSA as their

14  Financial Consultant at the expense of the estate.  The principal of CSA is Anthony Scalese, CPA.

15  Mr. Scalese has provided, and likely will continue to provide, the majority of the services rendered

16  by CSA to the Debtors.[2]  CSA is expected to render, among other services, the following services

17  to the Debtors, subject to the Court's approval:

18       1.    Provide written, verbal, quantitative and qualitative assistance and support to the
              Chief Reorganization Officer (Kevin Tierney)[3] and the Company, including but not
19            limited to:

20            (a)    Draft, review, modeling and finalization of detail restructuring plan and
                     related schedules;
21            (b)    Prepare, in summary and presentation format, finalized restructuring plan
                     and financial model; and
22            (c)    Collaborate and assist, either directly or in support of, any inside or outside
                     constituents impacted by the Company restructuring plan, including but not
23                   limited to creditors, employees, customers, counsel, bankruptcy trustee, and
                     other Company affiliates.
24
         2.    Perform review or other procedures to ensure Company financial statements are
25            materially accurate.

26

27  [2] A copy of Mr. Scalese's Resume is attached to the Application as Exhibit "1."

28  [3] As set forth in the Application, the Debtors intend to retain Mr. Tierney as their Chief Reorganization Officer.

3.      Assist Company with accounting department restructure, guidance and oversight (including on-site visits at the Company's Los Angeles office, if and when needed).

4.      Develop and prepare financial statements as of September 30, 2020, which will be utilized as a base period for restructuring plan.

5.      Prepare, in presentation format, finalized Company financial statements.

6.      Develop a five year financial mode for each of the Company's seven operating sites, including any special government activities, that include all respective financial statements (income statement, balance sheet and cash flow) and any required detail schedules, that are able to be presented in a consolidated form.

7.      Prepare a financial sensitivity analysis based on item 6.

8.      Prepare other reports, as required, to support the restructuring activities either in presentation or detailed form.

9.      Prepare, manage, or assist with bankruptcy requirements, including but not limited to:

    (a)      7-Day Package, DIP banking, and related compliance;
    (b)      Schedules, Statement of Financial Affairs;
    (c)      Monthly Operating Reports;
    (d)      Projections, Liquidation Analysis, and other Plan and Disclosure Statement materials;
    (e)      Other bankruptcy reporting and financial advisory services, as required.

10.     Assist with finding and placing debtor in possession financing.

11.     Assist with finding and placing other financing-to be determined.

B.      **Whether professional seeks compensation pursuant to 11 U.S.C. § 328 or 11 U.S.C. § 330**

The Debtors seek to employ CSA pursuant to 11 U.S.C. § 327.  As set forth below, the Debtors seek the Court's approval to pay CSA on a monthly basis and CSA will seek approval of its compensation and reimbursement of its expenses pursuant to 11 U.S.C. §§ 330 and 331.

C.      **Arrangements for Compensation**

Prior to the Petition Date, CSA received a retainer of $15,000 as an advance against fees and costs to be incurred by CSA after the commencement of the case (the "Retainer").

The Debtors propose to retain CSA as their Financial Consultant on an hourly basis, at its usual billing rate of $200.00/hour, plus reimbursement of out-of-pocket expenses,[4] and to compensate CSA on the following basis:

First, with respect to the $15,000 Retainer, CSA will draw down on the Retainer in accordance with the *Guide to Applications for Retainers, and Professionals and Insider Compensation* ("Fee Guide"), promulgated by the Office of the United States Trustee. The Retainer will be maintained in CSA's regular business account rather than a segregated account.  CSA will submit a monthly Professional Fee Statement each month until the Retainer is exhausted.

Second, contemporaneously with the filing of the Application, the Debtors intend to file a motion to authorize procedures (the "Fee Procedures Motion"), which mirror the provisions of the Fee Guide, for the Debtors and all of their professionals, including Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), as general bankruptcy counsel for the Debtors, Kevin S. Tierney ("Tierney"), as Chief Reorganization Officer, CSA Partners, LLC ("CSA"), as Financial Consultant, Joel Glaser APC ("Glaser"), as Business Litigation Counsel,[5] and counsel for the official committee of unsecured creditors (the "Committee"), if one is appointed, to receive payments of their accruing fees and costs on a monthly basis.[6]

Subject to the Court's approval of the Fee Procedures Motion, and without limiting the specificity contained therein, the salient terms of the procedures are summarized as follows:

1.    On or before the **20th** day of each month following the month for which compensation and reimbursement of expenses is sought, each professional will file a monthly statement with the Court itemizing the fees and costs incurred by each professional seeking compensation from the estate.  The Professional will serve copies of the monthly statement upon the Debtors, the Office of the United States Trustee, those parties who request special notice in the Debtors' case, and upon any counsel for the committee, if one is appointed or, if not appointed, upon the creditors holding the 20 largest general unsecured claims in this case.

---

[4] A copy of rates of reimbursement of expenses is attached to the Application as Exhibit "2."

[5] The Debtors are contemporaneously filing with the Court, applications to employ Danning Gill, Tierney and Glaser.

[6] Professionals employed in the future by the Debtors and a committee (if formed), with respect to which the Court's order approving such employment will authorize the professional to seek compensation and reimbursement of expenses in accordance with the Fee Procedures Motion.

2.    If no objection to the monthly statement is filed and served within ten **(10)** days after the service of the monthly statement is filed, the Debtors may pay: (a) Danning Gill and any professionals employed by a committee 80% of the fees and 100% of the expenses for which payment was sought; and (b) Tierney. CSA and Glaser 90% of the fees and 100% of the expense for which payment was sought.  Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

3.    If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtors will not pay the applicable professional the amount of the disputed funds, until the objection has been either resolved between the objecting party and the professional on a consensual basis.  If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application. Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

4.    In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim compensation (including any amounts held back pursuant to paragraphs 2 and 3 above) and reimbursement of expenses not less frequently than every 120 days.  Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

5.    The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

6.    Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

The Debtors are requesting that the Court approve the employment of CSA as their

Financial Consultant and the above procedure for payment of its fees and expenses for the

following reasons:  First, given the level of services performed by CSA to the Debtors, its hourly

rate is reasonable.  Second, when CSA accepted the engagement with the Company, it was

understood that in order for CSA to perform the required services, it would need to devote

significant amounts of time and resources to the Company, essentially full (or more) time services

of Mr. Scalese.  Since the Petition Date, CSA has continued to devote its time and resources to the

Company on a full time basis.  Third, CSA operates a small business and given its full time

1  commitment to the Debtors, any undue delays in receipt of compensation would detrimentally

2  impact CSA's ability pay its employees, including Mr. Scalese, just as an employee's failure to

3  receive wages would cause a hardship.  Under the circumstances, the Debtors believe that

4  employment of CSA is in the best interests of the estates and it is appropriate to pay CSA on a

5  monthly basis.

6

7  D.  <u>Name, address and telephone number of person who will provide a copy of the Application</u>

8  A copy of the Application is appended hereto.  Requests for copies may be made via email

9  to Debtors' proposed counsel, Attn.: Zev Shechtman at Danning, Gill, Israel & Krasnoff, LLP, at ,

10 Email: <u>ZS@DanningGill.com</u>.[7]  The address for Debtors' proposed counsel is Danning, Gill, Israel

11 & Krasnoff, LLP, Attn.: Zev Shechtman, 1901 Avenue of the Stars, Suite 450, Los Angeles,

12 California 90067 and the telephone number is (310) 277-0077.

13

14 **PLEASE TAKE FURTHER NOTICE** that pursuant to LBR 9013-1(o)(1), any creditors

15 or interested parties seeking to oppose the Application must:

16 (1) file and serve a written opposition and request for hearing within fourteen (14) days

17 after the date of service of this notice plus three (3) additional days if you were served by mail or

18 pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F); and

19 (2) serve a copy of the same upon the proposed attorneys for the Debtors at the address

20 listed in the upper left hand corner of the first page of the Application, and upon the Office of the

21 United States Trustee (the "United States Trustee"), located at 915 Wilshire Boulevard, Suite 1850,

22 Los Angeles, California 90017.

23

24

25

26

27

28

---

[7] In light of the local, state and federal guidelines responsive the COVID-19 pandemic, email communications are highly encouraged.  See, e.g., https://www.cacb.uscourts.gov/coronavirus-covid-19-and-court-operations.

1    Pursuant to LBR 9013-1(h), the failure to file a response may be deemed by the Court to be

2   consent to the relief sought.

3

4   DATED:  December 30, 2020                DANNING, GILL, ISRAEL & KRASNOFF, LLP

5

6                                            By:        /s/ Zev Shechtman

7                                                 ZEV SHECHTMAN
                                                 Proposed Attorneys for Airport Van Rental, Inc.
8                                                 and affiliated Debtors and Debtors in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## APPLICATION

Airport Van Rental, Inc., a California corporation ("AVR California" or the "Company"), and its four affiliated debtors and debtors in possession, Airport Van Rental, Inc., a Georgia corporation, Airport Van Rental, Inc., a Nevada corporation, Airport Van Rental, LLP, a Texas limited liability partnership, and AVR Vanpool, Inc., a California corporation ("AVR Vanpool") (collectively the "Debtors"), respectfully represent as follows:

### A.    Bankruptcy Background

1.    On December 11, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors filed a number of motions seeking typical "first day" orders, including an order directing the joint administration of their chapter 11 cases.  On December 11, 2020, the Court entered an order granting the Debtors' motions to jointly administer the cases.  The Debtors remain in possession of their properties and continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B.    The Debtors' History and Business Operations

2.    AVR California was founded in 2007 by Yazdan and Kim Irani.  The Iranis founded AVR California because they recognized that car rental companies do not adequately serve the needs of customers who need space for five or more passengers.  Over the last 13 years, the Iranis built the Company (consisting of the five Debtors and some non-Debtors that are no longer operating) into an industry leader in the van rental business in the United States.

3.    Very generally, the Company's business has three components.  *First*, the Company rents vans to the public.  The Company has an online reservation system at www.airportvanrentals.com and accepts bookings through online travel agencies such as Priceline.com.  This first component is referred to as its "retail" business.  *Second*, the Company has contracts with private businesses that need to rent vans to conduct their business.  The Company has been recognized by Amazon as a National Recognized Preferred Vendor in

connection with Amazon's "Delivery Service Partner" program.[8] *Third*, the Company has "vanpool" contracts with governmental entities pursuant to which it supplies and maintains vans used by government employees as part of environmentally-friendly vanpool programs.

4.      In connection with the vanpool business, in May 2019, AVR California was awarded a 3-year contract for vanpool vehicle leasing and services at LAX and the Van Nuys Airport.  The Company's vans are used as part of an Employee Commute Reduction Program, which is part of an employee benefit program provided by Los Angeles World Airports ("LAWA").  Under the Company's contract with LAWA, the Company may receive revenues of up to $3.6 million over the 3-year term of the contract.  The Company currently is renting approximately 75 vans to LAWA.

5.      As part of its contract with LAWA, the Company granted the option of allowing other departments in the City of Los Angeles (the "City") and/or other governmental agencies outside of the City to rent vans using the prices, terms and conditions of the LAWA contract.  In August 2019, AVR California was awarded a 3-year contract by the Los Angeles Department of Water and Power (the "DWP") to rent vans, including a certain type of hybrid van, for the DWP's vanpool program.  Under the contract with the DWP, the Company may receive revenues of up to $4.6 million over the 3-year term of the contract.  AVR California currently is renting approximately 97 vans to the DWP.

6.      In the Los Angeles area, the Company also has contracts to supply vans to, among others, the Los Angeles Harbor Department.  The Company often supplies hundreds of vehicles to U.S. Postal Service locations throughout southern California during the holiday period, when its need for vehicles increases.  During the recent election season, AVR California rented approximately 150 vans to Los Angeles County for use in the transportation of election-related materials.  AVR California is able to satisfy these needs because it already has gone through the

---

[8] Under the program, delivery persons form small businesses and contract to deliver Amazon packages in Prime-branded blue vans and uniforms.  Amazon negotiated special deals on van leases with companies such as AVR California, and requires its DSPs to use preferred vendors. The Company is currently renting approximately 200 vans to Amazon DSPs.

1  process of being an approved supplier of vans for various governmental entities, including the City

2  and the County of Los Angeles.

3     7.  The Company has also grown its vanpool business outside of the Los Angeles area.

4  The Company was approved as a vanpool supplier for, among others, the Victor Valley Transit

5  Authority Vanpool Subsidy program and the San Diego Association of Governments (SANDAG)

6  Vanpool Subsidy Program.  In September 2019, AVR Vanpool was awarded a 5-year contract to

7  provide over 200 vehicles to the Dallas Area Rapid Transit ("DART").  Under AVR Vanpool's

8  contract with DART, AVR Vanpool may receive revenues of up to approximately $17 million over

9  the 5-year term of the contract.  AVR Vanpool currently is renting approximately 15 vans to

10  DART.

11     8.  The Company has also entered into contracts to provide vans to private companies,

12  schools and sports teams.  The contracts are typically short term (for example, one to six weeks).

13  but generally have a high continual / recurring renewal rate, which the Company estimates to be

14  approximately 90%.

15

16  **C.**  **Factors Precipitating the Debtors' Chapter 11 Filing**

17     9.  From $3.8 million in 2011, the Company's revenues grew to $39 million in 2019.

18  The Company was poised to continue growing until the COVID-19 pandemic took hold,

19  devastating the retail business which comprised 85% of the Company's revenues in 2019.  The

20  Company, which used to operate in 16 cities in 10 states, now operates in 7 cities in 5 states.  In

21  early 2020, the Company had over 210 employees throughout the United States; today, it has

22  approximately 60.  Like other car rental companies, the Company also cut the size of its fleet, from

23  approximately 2,300 vehicles to 1,100.  Car rental companies cut their fleet size by selling their

24  vehicles through auction.  Because of the large number of vehicles being offered for sale and the

25  few number of vehicles being purchased, the market value of used passenger vehicles dropped.

26  Since the Company is liable to its vehicle financiers for the full acquisition price of a vehicle

27  regardless of how much that vehicle sells for – even if the vehicle is "leased" from the financier –

28  the Company bore the brunt of the decrease in market values.

10.     Like Hertz and many other companies that rely heavily on air travelers, the Debtors found themselves in need of bankruptcy relief.  A number of the Company's financiers (including some who are exiting the industry) are pursuing or are threatening to pursue their rights under existing financing arrangements.  The Company has been open with its lenders regarding the Company's need for bankruptcy relief.  As set forth in greater detail below, the Company hired outside professionals, including a Chief Reorganization Advisor, to evaluate the prospects for the Debtors' reorganization or potential sale of their assets (or some of their assets).  In October 2020, the Debtors implemented an "Adequate Protection Program" pursuant to which all financiers have received monthly payments to (a) compensate them for the decrease in value of their collateral, (b) provide interest, at a rate of 6.0% per annum, based on current market values of the vehicles in which they have an interest, and (c) remit proceeds from sales of the vehicles in which they had an interest.  In October and November 2020, the Company paid financing companies an aggregate of approximately $420,000 to compensate them for the decrease in value of the vehicles, $200,000 of interest, and $1.5 million from the sales of vehicles.

## D.     The Debtors' Professionals

11.     Since 2011, the Debtors' general counsel for business and litigation matters has been Joel Glaser APC ("Glaser").  Glaser has provided services to the Debtors relating to business litigation, employment practices liability, products liability and personal injury liability.  Glaser represents the Debtors, in, or is otherwise familiar with, the Debtors' pending litigation matters.  Subject to Court approval, the Debtors intend to retain Mr. Glaser's firm to continue to represent them as special as-needed business litigation counsel.

12.     On or about September 4, 2020, the Debtors retained Kevin S. Tierney ("Tierney") as a consultant to evaluate the Debtors' financial situation, advise them as to the best course of action for a business restructuring, and communicate with critical stakeholders in an effort to establish a consensual out-of-court work-out or chapter 11 restructuring plan.  Subject to Court approval, the Debtors intend to retain Mr. Tierney in the Debtors' bankruptcy cases, as a professional person, with the title of "Chief Reorganization Officer."

13.     On or about September 20, 2020, the Debtors retained CSA Partners, LLC ("CSA"), to provide financial advisory and accounting restructuring services.  The principal of CSA is Anthony Scalese, CPA.  CSA has provided, and likely will continue to provide, the majority of the services rendered by CSA to the Debtors.  As set forth in this Application and in greater detail below, the Debtors seek to retain CSA as a financial consultant in the Debtors' bankruptcy cases.

14.     Messrs. Tierney and Scalese have separate offices but have generally work as a team, together providing a variety of financial consulting and turnaround services needed in this complex chapter 11 case.  Although it is a team effort, Tierney's work tends to be more strategic and oriented toward financial and business planning, while CSA provides the professional accounting and financial advisory work necessary for bankruptcy compliance.

15.     On or about October 22, 2020, the Debtors retained Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), to provide insolvency-related legal advice.  Subject to Court approval, the Debtors intend to retain Danning Gill as their general bankruptcy counsel in the Debtors' bankruptcy cases.  The attorneys at Danning Gill principally responsible for representing the Debtors in these cases are John N. Tedford, IV, Zev Shechtman and Michael G. D'Alba.

16.     For 2018 income tax returns filed by AVR California and related entities, AVR California's outside tax accountant was El Segundo-based Beach Freeman Lim & Cleland, LLP.  For its 2019 income tax returns, AVR California used Pasadena-based HKG LLP ("HKG").  The Debtors have not yet determined whether to use HKG, or another firm, as their tax accountant during this bankruptcy case.

**E.    The Debtors' Plan for this Case**

17.     Presently, the Debtors intend to sell certain assets, and assign certain liabilities, to a new company that has been or will be formed by certain of the Company's current officers.  Any sale will be subject to Court approval, and likely subject to overbids.

18.     The Debtors are evaluating the possibility of a chapter 11 plan that, among other things, (a) treats the Debtors (and possibly some non-Debtors) as one substantively consolidated entity, (b) pays the Debtors' financing companies the full amount of the secured portion of their

1  claims during the same period of time those claims would be paid in the ordinary course of

2  business, and (c) uses future earnings to make distributions to general unsecured creditors over a

3  period of years.  However, absent a major source of new funding, such a plan would require

4  cooperation by substantially all of the financing companies and the consent of unsecured creditors.

5          19.     To accomplish an orderly liquidation or confirmation of a chapter 11 plan, the

6  Debtors intend to, among other things (a) continue to operate and maintain their business and the

7  assets, including the fleets of vehicles in which the financing companies have an interest,

8  (b) continue to make adequate protection payments to the financing companies in accordance with

9  the Adequate Protection Program and (c) continue to sell vehicles in the ordinary course and pay

10  the net sales proceeds to the financing companies.

11

12  **F.      The Debtors' Proposed Retention of CSA as Financial Consultant**

13          20.     Given the important leadership role CSA has played to date, the Debtors believe it is

14  essential that CSA stay on and be retained as the Debtors' Financial Consultant.  CSA is expected

15  to render, among other services, the following services to the Debtors, subject to the Court's

16  approval:

17          1.      Provide written, verbal, quantitative and qualitative assistance and support to the
                    Chief Reorganization Officer (Kevin Tierney)[9] and the Company, including but not
18                  limited to:

19                  (a)     Draft, review, modeling and finalization of detail restructuring plan and
                            related schedules;
20                  (b)     Prepare, in summary and presentation format, finalized restructuring plan
                            and financial model; and
21                  (c)     Collaborate and assist, either directly or in support of, any inside or outside
                            constituents impacted by the Company restructuring plan, including but not
22                          limited to creditors, employees, customers, counsel, bankruptcy trustee, and
                            other Company affiliates.
23
24          2.      Perform review or other procedures to ensure Company financial statements are
                    materially accurate.

25          3.      Assist Company with accounting department restructure, guidance and oversight
                    (including on-site visits at the Company's Los Angeles office, if and when needed).
26

27
_____
28      [9] As set forth in the Application, the Debtors intend to retain Mr. Tierney as their Chief Reorganization Officer.

4.    Develop and prepare financial statements as of September 30, 2020, which will be utilized as a base period for restructuring plan.

5.    Prepare, in presentation format, finalized Company financial statements.

6.    Develop a five year financial model for each of the Company's seven operating sites, including any special government activities, that include all respective financial statements (income statement, balance sheet and cash flow) and any required detail schedules, that are able to be presented in a consolidated form.

7.    Prepare a financial sensitivity analysis based on item 6.

8.    Prepare other reports, as required, to support the restructuring activities either in presentation or detailed form.

9.    Prepare, manage, or assist with bankruptcy requirements, including but not limited to:

    (a)    7-Day Package, DIP banking, and related compliance;
    (b)    Schedules, Statement of Financial Affairs;
    (c)    Monthly Operating Reports;
    (d)    Projections, Liquidation Analysis, and other Plan and Disclosure Statement materials;
    (e)    Other bankruptcy reporting and financial advisory services, as required.

10.    Assist with finding and placing debtor in possession financing.

11.    Assist with finding and placing other financing-to be determined.

**G.    Qualifications of CSA**

21.    The Debtors propose to retain CSA, as their Financial Consultant, effective as of December 11, 2020. The principal of CSA is Anthony Scalese, CPA. Mr. Scalese has provided, and likely will continue to provide, the majority of the services rendered by CSA to the Debtors. Mr. Scalese has extensive experience in matters of this type, including extensive experience in bankruptcy and business matters and has become well familiar with the financial affairs of the Debtors. The breadth of experience and length of service in the financial community of Mr. Scalese, is described in his resume, a copy of which is attached as Exhibit "1" hereto.

**H.    Arrangements for Compensation**

22.    Prior to the Petition Date, CSA received a retainer of $15,000 as an advance against fees and costs to be incurred by CSA after the commencement of the case (the "Retainer").

23.     The Debtors propose to retain CSA as their Financial Consultant on an hourly basis, at its usual billing rate of $200.00/hour, plus reimbursement of out-of-pocket expenses,[10] and to compensate CSA on the following basis:

24.     First, with respect to the $15,000 Retainer, CSA will draw down on the Retainer in accordance with the *Guide to* Applications *for Retainers, and Professionals and Insider Compensation* ("Fee Guide"), promulgated by the Office of the United States Trustee. The Retainer will be maintained in CSA's regular business account rather than a segregated account.  CSA will submit a monthly Professional Fee Statement each month until the Retainer is exhausted.

25.     Second, contemporaneously with the filing of the Application, the Debtors intend to file a motion to authorize procedures (*the* "Fee Procedures Motion"), which mirror the provisions of the Fee Guide, for the Debtors and all of their professionals, including Danning Gill, as general bankruptcy counsel for the Debtors, Tierney, as Chief Reorganization Officer, CSA, as Financial Consultant, Glaser, as Business Litigation Counsel,[11] and counsel for the official committee of unsecured creditors ("committee"), if one is appointed, to receive payments of their accruing fees and costs on a monthly basis.[12]

26.     Subject to the Court's approval of the Fee Procedures Motion, and without limiting the specificity contained therein, the salient terms of the procedures are summarized as follows:

(a)     On or before the **20th** day of each month following the month for which compensation and reimbursement of expenses is sought, each professional will file a monthly statement with the Court itemizing the fees and costs incurred by each professional seeking compensation from the estate.  The Professional will serve copies of the monthly statement upon the Debtors, the Office of the United States Trustee, those parties who request special notice in the Debtors' case, and upon any counsel for the committee, if one is appointed or, if not appointed, upon the creditors holding the 20 largest general unsecured claims in this case.

(b)     If no objection to the monthly statement is filed and served within ten **(10)** days after the service of the monthly statement is filed, the Debtors may pay: (a) Danning Gill and any professionals employed by a committee 80% of the fees and

---

[10] A copy of rates of reimbursement of expenses is attached to the Application as Exhibit "2."

[11] The Debtors are contemporaneously filing with the Court, applications to employ Danning Gill, Tierney and Glaser.

[12] Professionals employed in the future by the Debtors and a committee (if formed), with respect to which the Court's order approving such employment will authorize the professional to seek compensation and reimbursement of expenses in accordance with the Fee Procedures Motion.

100% of the expenses for which payment was sought; and (b) Tierney. CSA and Glaser 90% of the fees and 100% of the expense for which payment was sought. Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

(c)    If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtors will not pay the applicable professional the amount of the disputed funds, until the objection has been either resolved between the objecting party and the professional on a consensual basis.  If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application. Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

(d)    In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim compensation (including any amounts held back pursuant to paragraphs (b) and (c) above) and reimbursement of expenses not less frequently than every 120 days.  Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

(e)    The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

(f)    Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

27.    The Debtors are requesting that the Court approve the employment of CSA as their Financial Consultant and the above procedure for payment of its fees and expenses for the following reasons:  First, given the level of services performed by CSA to the Debtors, its hourly rate is reasonable.  Second, when CSA accepted the engagement with the Company, it was understood that in order for CSA to perform the required services, it would need to devote significant amounts of time and resources to the Company, essentially full (or more) time services of Mr. Scalese.  Since the Petition Date, CSA has continued to devote its time and resources to the Company on a full time basis.  Third, CSA operates a small business and given its full time

1   commitment to the Debtors, any undue delays in receipt of compensation would detrimentally

2   impact CSA's ability pay its employees, including Mr. Scalese, just as an employee's failure to

3   receive wages would cause a hardship.  Under the circumstances, the Debtors believe that

4   employment of CSA is in the best interests of the estates and it is appropriate to pay CSA on a

5   monthly basis.

6

7   **I.**      **Disinterestedness of CSA**

8          28.      As of the date of this Application, to the best of the Debtors' knowledge and after

9   consideration of the disclosures in the Statement of Disinterestedness filed concurrently herewith,

10  the Debtors believe that CSA, its principal and employees of CSA are disinterested persons as that

11  term is defined in 11 U.S.C. § 101(14), are not connected with the Debtors, their creditors, any

12  other party in interest, their attorneys and accountants, or to the estates, and have no relation to any

13  bankruptcy judge presiding in this district, the Clerk of the Court or any relation to the United

14  States Trustee in this district, or any person employed at the Court or the Office of the United

15  States Trustee, nor does CSA, its principal and employees represent or hold an adverse interest

16  with respect to the Debtors, any creditor, or to the estates, *except to the extent that*: prior to the

17  Petition Date, CSA was retained by the Debtors to provide financial restructuring services as set

18  forth above.

19         29.      CSA has not been retained to assist any entity or person other than the Debtors on

20  matters relating to, or in connection with, the bankruptcy cases.

21         30.      In addition, the Debtors do not owe CSA any amount for services performed or

22  expenses incurred prior to the Petition Date and thus, CSA is not a prepetition creditor of the

23  Debtors.

24

25

26

27

28

1    WHEREFORE, the Debtors requests that the Court enter an order authorizing it to employ

2   CSA as their Financial Consultant, effective as of December 11, 2020, as an administrative expense

3   in this bankruptcy case, and for such other and further relief as may be determined just and proper.

4

5   DATED: December __30__, 2020          Airport Van Rental, Inc. and affiliated Debtors and
                                          Debtors in Possession.

6

7

8                                         By: _____

9                                             Yazdan Irani, Chief Executive Officer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
## OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014

1.    Name, address and telephone number of the professional ("the Professional" or "the "Firm") submitting this Statement:  See Resume attached as  Exhibit "1" hereto.

CSA Partners LLC ("CSA")
2934½ Beverly Glen #597
Los Angeles, CA 90077
Main: (310) 684-2019
Direct: (310) 494-4009
Fax: (310) 388-3148

2.    The services to be rendered by the Professional in this case are (specify):

See paragraph  of the Application.  20

3.    The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

See paragraphs 22-27 of the Application and Exhibit "2" for Rates of Reimbursement of Expenses attached hereto.

4.    The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

See paragraph 22 of the Application.  Without limiting the disclosures contained in the Application:  Prior to the Petition Date, the CSA received a retainer $15,000 as an advance against fees and costs to be incurred by CSA after the commencement of the case (the "Retainer").  CSA will submit a monthly Professional Fee Statement each month until the retainer is exhausted.

In addition, contemporaneously with the filing of the Application, the Debtors intend to file a motion to authorize procedures (the "Fee Procedures Motion"), which mirror the provisions of the Fee Guide, for the Debtors and all of their professionals, including the Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), as general bankruptcy counsel for the Debtors, Kevin S. Tierney ("Tierney"), as Chief Reorganization Officer, CSA as Financial Consultant, Joel Glaser APC ("Glaser"), as Business Litigation Counsel, and counsel for the official committee of unsecured creditors ("committee"), if one is appointed, to receive payments of their accruing fees and costs on a monthly basis.

Subject to the Court's approval of the Fee Procedures Motion, and without limiting the specificity contained therein, the salient terms of the procedures are summarized as follows:

(a)    On or before the **20th** day of each month following the month for which compensation and reimbursement of expenses is sought, each professional will file a monthly statement with the Court itemizing the fees and costs incurred by each professional seeking compensation from the estate.  The Professional will serve copies of the monthly statement upon the Debtors, the Office of the United States Trustee, those parties who request special notice in the Debtors' case, and upon any counsel for the committee, if one is appointed or, if not appointed, upon the creditors holding the 20 largest general unsecured claims in this case.

(b)    If no objection to the monthly statement is filed and served within ten **(10)** days after the service of the monthly statement is filed, the Debtors may pay: (a)

Danning Gill and any professionals employed by a committee 80% of the fees and 100% of the expenses for which payment was sought; and (b) Tierney. CSA and Glaser 90% of the fees and 100% of the expense for which payment was sought. Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

(c)    If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtors will not pay the applicable professional the amount of the disputed funds, until the objection has been either resolved between the objecting party and the professional on a consensual basis.  If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application. Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

(d)    In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim compensation (including any amounts held back pursuant to paragraphs (b) and (c) above) and reimbursement of expenses not less frequently than every 120 days.  Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

(e)    The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

(f)    Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

5.    The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

Conflicts check of all known creditors and potential creditors of the Debtors.

6.    The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

Based on the conflict check, CSA does not currently represent any creditor or other party in interest.

As stated in the Application, CSA was previously retained by the Debtors on September 22, 2020, to provide financial restructuring services.

CSA is not a creditor of the estate.

7.  The Professional is not a creditor, an equity security holder or an insider of the debtor, except as follows (specify, attaching extra pages as necessary):

None.

8.  The Professional is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtors.

9.  The Professional does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, except as follows (specify, attaching extra pages as necessary):

None.

10. Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Anthony Scalese, Managing Partner
CSA Partners LLC
2934½ Beverly Glen #597
Los Angeles, CA 90077
Main: (310) 684-2019
Direct: (310) 494-4009
Fax: (310) 388-31482019

11. The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

None.

12. Total number of attached pages of supporting documentation:  0.

13. After conducting or supervising the investigation described in paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that paragraphs 6 through 9 and 11 are stated on information and belief.

Executed on December __30__, 2020, at Los Angeles, California.

_____
ANTHONY SCALESE

EXHIBIT 1

# Anthony A. Scalese, CPA, MBA

---

## SENIOR FINANCIAL EXECUTIVE & BUSINESS CONSULTANT

---

Highly accomplished accounting and finance executive with over 20 years of experience in public, private and startup companies.  Served as senior financial executive, president and board member/audit committee chairman. Expertise spans multiple industries and sectors for both domestic and international markets, including publicly traded and private companies. Offers a rare blend of finance and accounting expertise backed by operations, HR, IT, business development, M&A, business restructuring and strategic planning.

- Hands-on financial executive/consultant
- Public (SEC), private and startup companies
- Short or long-term contract assignments
- Excellent external and internal communication skills

- Fund raising-debt/equity (raised over $100m)
- Restructuring  and bankruptcy support
- Buy/sell side M&A
- Sole member of finance group or lead multi-member team

---

## PROFESSIONAL EXPERIENCE

---

**CSA PARTNERS LLC– FOUNDER & MANAGING PARTNER**                    **May 2016 - PRESENT**
*Financial, accounting, capital raising and business consulting services.*

- Financial and business consulting for multiple clients in multiple industries, public or private
- Broad CFO experience with zero revenue startup to multi-million dollar companies
- Extensive Securities and Exchange Commission reporting and compliance experience
- Ability to provide hands on basic accounting or complex acquisition services
- Provide bankruptcy, turn-around and growth financial services
- Raised over $100 Million in combined debt and equity capital
- Experienced board and audit committee member

**CHIEF FINANCIAL OFFICER**                                           **July 2014 - April 2016**
*Startup clean-tech company, specializing in chemical/air-quality products for use in energy production.*

- Short term assignment, engaged to restructure, commercialize products and assist in sale of Company
- Served as Secretary and Senior Financial Officer of the Company
- Responsible for capital management, including all capital raising activities (debt and equity)
- Executed and managed the commercialization of Company products, including contract review/negotiation
- Managed IT, HR and manufacturing operations
- Responsible for all accounting and finance functions; including financial reporting, tax management, operating/capital budget preparation, forecasting, internal controls and pricing/costing analysis
- Responsible for maintaining and presenting financial and operating results to internal and external stakeholders

---

# Anthony A. Scalese, CPA, MBA

**CHIEF FINANCIAL OFFICER**          **September 2010 - July 2014**
*Publicly traded multi-million dollar manufacturer of medical devices.*

- Served as Secretary and Senior Financial Officer of the Company
- Executed and managed Company strategic direction, through multiple domestic and international subsidiaries and provide financial leadership for business turnaround/restructure
- Led business development team, including acquisitions (all aspects); strategic analysis, due diligence, valuation analysis, contract negotiation, financing and integration
- Developed and managed accounting, IT, HR, insurance regulatory and billing
- Responsible for all accounting and finance functions; including consolidation, financial reporting, technical accounting research and application, audit/tax management, operating/capital budget preparation, forecasting, internal controls, pricing/costing analysis and preparation/filing of all SEC reports
- Responsible for presenting financial and operating results to internal and external stakeholders
- Performed all investor relations activities; including investor communications, press release preparation, investor road shows, earnings call and investor presentations
- Responsible for treasury function, debt and equity and working capital management
- Provided Company contract review and guidance
- Active member of regulatory committee, including management of regulatory and commercial insurance audits

**CHIEF FINANCIAL OFFICER & DIVISION PRESIDENT**      **January 2000 - September 2010**
*Publicly traded high-tech manufacturer.*

- Served as Secretary and Senior Financial Officer of the Company
- Appointed President of multiple business units to provide financial leadership in turnaround/restructure situation and prepare for sale
- Directed full financial restructure; including facility consolidation, commercial bank debt restructure, personnel reduction, process automation, expense control, manufacturing process improvements, product line evaluation and sales channel modification
- Completed multiple acquisitions (all aspects); which included strategic analysis, due diligence, valuation analysis, contract negotiation, financing and integration
- Responsible for all accounting, finance and SEC preparation and reporting functions
- Managed the treasury function, short/long term cash planning and working capital management
- Performed all investor relations activities; including investor communications, press release preparation, investor road shows, earnings calls and investor presentations

**DIRECTOR OF FINANCIAL AND SEC REPORTING**        **May 1999 - January 2000**
*Multi-billion dollar provider of healthcare specialty devices and services.*

- Responsible for monthly accounting close and year-end financial audits
- Responsible for compliance, preparation and filing of all SEC documents
- Provided technical accounting research, including compliance with healthcare rules
- Analyzed, reviewed, and presented monthly reporting results with internal and external stakeholders
- Coordinated and led IPO process

000024

# Anthony A. Scalese, CPA, MBA

**SR. FINANCIAL ANALYST**                                                    **October 1997 - May 1999**

*Multi-billion dollar publicly held health insurance provider.*


**ACCOUNTANT**                                                               **July 1996 - October 1997**

*Multi-billion dollar major non-alcoholic worldwide beverage bottling and distribution.*


**AUDIT MANAGER**                                                           **December 1994 - July 1996**

*Regional accounting firm specializing in financial audit, tax and consulting.*


---

### EDUCATION

---

**Certified Public Accountant –** Active – Colorado

**California Finance License –** Active - California

**MBA -** University of Colorado - July 2006

**BSBA - Accounting -** Colorado State University - May 1995


---

### OTHER

---

**YMCA -** Board of Trustees and Finance Committee Member

000025

EXHIBIT 2

## RATES OF REIMBURSEMENT OF EXPENSES

Reprographic Expense (Photocopy, Scan, Print).......................................................$ .20 per page

Facsimile - Incoming ................................................................................................$ .20 per page

Facsimile - Outgoing................................................................................................$1.00 per page

Mileage ..........................................................IRS Rate for Business Use (currently 0.58 per mile)

Telephone...................................................................................................................Actual Cost

Postage .......................................................................................................................Actual Cost

Messengers.................................................................................................................Actual Cost

Overnight Mail............................................................................................................Actual Cost

On-line Computer Research........................................................................................Actual Cost

Filing Fees..................................................................................................................Actual Cost

Deposition or Witness Fees ........................................................................................Actual Cost

Parking .......................................................................................................................Actual Cost

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF APPLICATION AND APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION TO EMPLOY CSA PARTNERS LLC, AS THEIR FINANCIAL CONSULTANT; AND STATEMENT OF DISINTERESTEDNESS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 30, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**: On (*date*)  December 30, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| December 30, 2020 | Vivian Servin | */s/ Vivian Servin* |
| *Date* | *Printed Name* | *Signature* |

1630542.1   7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

**1.** <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

Michael G D'Alba on behalf of Debtor AVR Vanpool, Inc., a California corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, Inc., a California corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, Inc., a Georgia corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, Inc., a Nevada corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, LLP., a Texas limited liability partnership
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
eryk.r.escobar@usdoj.gov

Evelina Gentry on behalf of Creditor United Rental Group, LLC f/k/a Mile Fleet, LLC
evelina.gentry@akerman.com, rob.diwa@akerman.com

Lydia A Hewett on behalf of Debtor Airport Van Rental, LLP., a Texas limited liability partnership
lydia.hewett@cpa.state.tx.us

Alan Craig Hochheiser on behalf of Creditor AmTrust North America, Inc. on behalf of Wesco Insurance Company
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Courtney J Hull on behalf of Interested Party Courtesy NEF
bk-chull@oag.texas.gov, sherri.simpson@oag.texas.gov

Matthew F Kye on behalf of Creditor Sumitomo Mitsui Finance and Leasing Co. Ltd.
mkye@kyelaw.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Haleh C Naimi on behalf of Creditor 1st Source Bank
hnaimi@advocatesolutionsinc.com

Tom Roddy Normandin on behalf of Creditor AFC CAL, LLC
tnormandin@pnbd.com, srichards@pnbd.com;cathyjones@pnbd.com;msmigura@pnbd.com

Zev Shechtman on behalf of Debtor AVR Vanpool, Inc., a California corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor Airport Van Rental, Inc., a California corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor Airport Van Rental, Inc., a Georgia corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor Airport Van Rental, Inc., a Nevada corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

1630542.1    7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Zev Shechtman on behalf of Debtor Airport Van Rental, LLP., a Texas limited liability partnership
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Richard A Solomon on behalf of Creditor Hitachi Capital America Corp.
richard@sgswlaw.com

John N Tedford, IV on behalf of Debtor Airport Van Rental, Inc., a California corporation
jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Glenn S Walter on behalf of Creditor Union Leasing, Inc.
gwalter@honigman.com

Larry D Webb on behalf of Interested Party INTERESTED PARTY
Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

**2. <u>SERVED BY U.S. MAIL</u>**

Debtor and Debtor-in-Possession
Airport Van Rental, Inc., a California
corporation
12911 Cerise Avenue
Hawthorne, CA 90250

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

20 LARGEST

1st Source Bank - PPP
Attn David W Cripe
100 N Michigan Street 3rd Fl
South Bend, IN  46601

Merchants Fleet
Attn Robert Singer
14 Central Park Drive 1st Floor
Hooksett, NH  3106

United Leasing Inc
Attn Rebecca S. Korba, IRP
Paralegal
3700 Morgan Ave
Evansville, IN  47715

Georgia Department of Revenue
Bankruptcy Section
1800 Century Blvd NE Ste 9100
Atlanta, GA  30303-1751

Automotive Finance Corporation
Attn Josh Risch
11299 N Illinois Street
Carmel, IN  46032

Brady Ervin and David Conn
4901 Wilkinson Blvd
Charlotte, NC  28208

California Department of Tax
and Fee Administration
1015 Ave Of Science  Ste 200
San Diego, CA  92128-3434

Carlos Simon
c/o David Spivak Esq
The Spivak Law Firm
16530 Ventura Blvd Suite 203
Encino, CA  91436

City Of Atlanta Dept Of Aviation
Attn:  John Selden, Airport Gen'l
Mgr.
6000 N Terminal Pkwy
Atlanta, GA  30320

Comerica Bank, Curtis C. Farmer,
Chairman, President and CEO
Department #166901
1717 Main Street
Dallas, TX  75201

Expedia Inc
1111 Expedia Group Way W
Seattle, WA  98119

Hincklease
Attn Brian Baker
2305 South Presidents Drive
Suite F
West Valley City, UT  84120

1630542.1   7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

Hitachi Capital America Corp
Attn Carol Owen
800 Connecticut Ave
4th Floor N
Norwalk, CT  06854

Jeffery A Johnson, Attys. for 1st Source
Bank
May Oberfell Lorber
302 S. Front Street, Suite C
Dowagiac, MI  49047

Jeffery A Johnson, Attys. for 1st
Source Bank
May Oberfell Lorber
4100 Edison Lakes Parkway Suite
100
Mishawaka. IN  46545

Juana Becerra, Cruz Becerra
Daniel Becerra & Adrian Becerra
c/o Eric Bershatisk
15233 Ventura Blvd Ste 707
Sherman Oaks, CA  91403

Jules & Associates
Attn Ryan Gonzales
515 South Figueroa Street
Suite 1900
Los Angeles, CA  90071

Michael Q Wallin Esq
26000 Towne Centre Drive Ste
130
Foothill Ranch, CA  92610

Penrod Keith, Shareholder, Attys. for
Hincklease
Dentons Durham Jones Pinegar P.C.
111 South Main Street, Suite 2400
Salt Lake City, UT  84111

Pep Boys
Attn Laika Prince
3111 W Allegheny Ave
Philadelphia, PA  19132-0445

Rockpile Capital LLC
27127 Calle Arroyo Suite 1910
San Juan Capistrano, CA  92675

Selig Leasing Company
Attn Kent Boskovich
2510 S 108th St Suite A
Milwaukee, WI  53227

Sutton Leasing Inc (Michigan)
Attn Benjamin Smith
3555 East 14 Mile Road
Sterling Heights, MI  48310

Union Leasing Inc (Illinois)
Attn Roger Setzke
425 N Martingale Rd 6th Floor
Schaumburg, IL  60173

United Mile Fleet
a/k/a United Rental Group LLC
PO Box 5225
Evansville, IN  47716-5225

United Mile Fleet LLC
a/k/a United Rental Group LLC
c/o Akerman LLP attn: Erica Gomer
350 East Olas Blvd. Ste 1600
Fort Lauderdale, FL  33301

United Mile Fleet LLC
a/k/a United Rental Group LLC
c/o Akerman LLP/Joshua R
Mandell
601 West Fifth St Ste 300
Los Angeles. CA  90071

Wells Fargo Bank, N.A.
1717 Grant Street
Denver, CO  80203

Wesco Insurance Co
c/o Aires Law Firm
6 Hughes Suite 205
Irvine, CA  92618

Bank of the West
Attn:  C T Corporation System,
Agent for Service of Process
818 W. Seventh St., Suite 930
Los Angeles, CA  90017

Bank of the West
Nandita Bakhshi, President and CEO
180 Montgomery Street, 25th Floor
San Francisco, CA  94104

Wells Fargo Bank, N.A.
Charles W Sharf, President and CEO
420 Montgomery Street
San Francisco, CA  94104

Wells Fargo Bank, N.A.
Attn:  CSC-Lawyers Incorporating
Service, Agent for Service of
Process
2710 Gateway Oaks Drive, Suite
150N

Sumitomo Mitsui Finance and Leasing
Company, Ltd.
CSC Lawyers Incorporation
Service,Agent for Service of Process
251 Little Falls Drive

Sumitomo Mitsui Finance and Leasing
Company, Ltd.
Masaki Tachibana, President and CEO
666 Third Avenue
New York, NY  10017

United States Attorney's Office
Civil Process Clerk
300 N. Los Angeles St., Room
7516
Los Angeles, CA  90012

U. S. Small Business Administration
Office of the General Counsel
312 N. Spring Street, 5th Floor
Los Angeles, CA  90012

United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC  20044

1st Source Corporation
Attn:  Andrea G. Short, Registered
Agent
100 N. Michigan St., 3rd Floor
South Bend, IN  46601

1630542.1  7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

Comerica Bank
Attn: Corporate Creations Network, Inc.,
Agent for Service of Process
4640 Admiralty Way, 5th Floor
Marina del Rey, CA 90292

Allen Brotherton Knox Esq, Attys. for
Brady Ervin and David Conn
Knox Brotherton Knox & Godfrey
816 E Trade St, PO Box 30848
Charlotte, NC 28230

Wesco Insurance Co
59 Maiden Lane 43rd Floor
New York, NY 10038

Nevada Department of Taxation
Attn: Randy Asbell
2550 Paseo Verde Pkwy #180
Henderson, NV 89074

Attn: Monique Parker
Texas Controller Office
Lyndon B. Johnson State Office Bldg
111 East 17th Street 9th Floor
Austin, TX 78774

Hampton Dunson
c/o Gabroy Law Offices
170 S Green Valley Pkwy
Suite 280
Henderson, NV 89012

LCA Bank Corporation
3150 Livernois Road, Suite 300
Troy, MI 48083-0000

LCA Bank Corporation
PO Box 1650
Troy, MI 48099-1650

LCA Bank Corporation
Attn: Thomas T. Billings,
Registered Agent
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111

Counsel for Small Business Administration
Elan S. Levey, Esq.
Office of the United States Attorney
300 N. Los Angeles St., Ste. 7516
Los Angeles, CA 90012

1630542.1    7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          **F 9013-3.1.PROOF.SERVICE**