1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@DanningGill.com*
2  ZEV SHECHTMAN (State Bar No. 266280)
   *zs@DanningGill.com*
3  MICHAEL G. D'ALBA (State Bar No. 264403)
   *mdalba@DanningGill.com*
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Proposed Attorneys for Airport Van Rental, Inc.
   and affiliated Debtors and Debtors in Possession

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  LOS ANGELES DIVISION

12

| 13 | In re | Case No. 2:20-bk-20876-BB |
|---|---|---|
| 14 | AIRPORT VAN RENTAL, INC., et al.,[1] | Chapter 11 |
| 15 | Debtors and Debtors in Possession. | **NOTICE OF APPLICATION AND APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION TO** |
| 16 | | **EMPLOY KEVIN S. TIERNEY, AS** |
| 17 | ☒  Affects all Debtors | **THEIR CHIEF REORGANIZATION OFFICER; AND STATEMENT OF** |
| 18 | ☐  Affects the following Debtor(s): | **DISINTERESTEDNESS** |
| 19 | | [No Hearing Required] |

20

21  **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE**

22  **AND PARTIES IN INTEREST:**

23          **PLEASE TAKE NOTICE** Airport Van Rental, Inc., a California corporation ("AVR

24  California" or "Company"), and its four affiliated debtors and debtors in possession (collectively

25

---

26      [1] Pursuant to an order of the Court, this case is being jointly administered with four chapter 11 cases filed by
    affiliated entities.  Such entities are Airport Van Rental, Inc., a Georgia corporation, case no. 2:20-bk-20877-BB;
27  Airport Van Rental, Inc., a Nevada corporation, case no. 2:20-bk-20878-BB; Airport Van Rental, LLP, a Texas limited
    liability partnership, case no. 2:20-bk-20882-BB; and AVR Vanpool, Inc., a California corporation, case no. 2:20-bk-
28  20883-BB.

1

the "Debtors"), hereby apply (the "Application") for entry of an order under 11 U.S.C. § 327(a) authorizing the Debtors to employ Kevin S. Tierney ("Mr. Tierney") as Chief Reorganization Officer ( the "CRO"), effective as of December 11, 2020 (the "Petition Date").  In compliance with Local Bankruptcy Rule ("LBR") 2014-1(b)(3), the Debtors hereby provide the following information regarding the Application:

A.    <u>Identity of professional and the purpose and scope for  which it is being employed</u>

On or about September 4, 2020, the Debtors retained Kevin S. Tierney as a consultant to evaluate the Debtors' financial situation, advise them as to the best course of action for a plan of reorganization, and communicate with critical creditors, vendors and stakeholders in an effort to establish a consensual out-of-court work-out or chapter 11 plan of reorganization.  Given the important leadership role Mr. Tierney has played to date, the Debtors believe it is essential that Mr. Tierney stay on and be retained as the Debtors' Chief Reorganization Officer ("CRO").[2]  Thus, the Debtors seek to retain Mr. Tierney as the CRO at the expense of the estate.  The CRO is expected to render, among other services, the following services to the Debtors, subject to the Court's approval:

1.    Consult, strategize and collaborate with the Debtors, Debtors' bankruptcy counsel, the Debtors' Financial Consultant[3] and other professionals of the Debtors as necessary to address the Debtors' business and financial needs;

2.    Develop a detailed Plan of Reorganization in consultation with the Debtors and their other professionals; and

3.    Communicate with critical creditors, vendors and stakeholders to obtain their cooperation and support of the Debtors' restructuring.

---

[2] Notwithstanding the use of the term "CRO," the Debtors are seeking to employ Mr. Tierney pursuant to section 327 of the Bankruptcy Code with compensation subject to sections 330 and 331, and modified only as set forth herein and the accompanying "Knudsen" motion, to allow for monthly payment procedures.

[3] As set forth in the Application, the Debtors intend to retain CSA Partners, LLC as their Financial Consultant.

1630217.3  26988

2

B.    Whether professional seeks compensation pursuant to 11 U.S.C. § 328 or 11 U.S.C. § 330

The Debtors seek to employ the CRO pursuant to 11 U.S.C. § 327.  As set forth below, the Debtors seek the Court's approval to pay the CRO on a monthly basis and the CRO will seek approval of his compensation and reimbursement of his expenses pursuant to 11 U.S.C. §§ 330 and 331.

C.    Arrangements for Compensation

Prior to the Petition Date, Mr. Tierney received a retainer of $48,510.00 as an advance against fees and costs to be incurred by Mr. Tierney after the commencement of the case (the "Retainer").

The Debtors propose to retain Mr. Tierney as CRO on an hourly basis, at his usual billing rate of $200.00/hour, plus reimbursement of out-of-pocket expenses,[4] and compensate Mr. Tierney on the following basis:

First, with respect to the $48,510.00 Retainer, Mr. Tierney will draw down on the Retainer in accordance with the *Guide to Applications for Retainers, and Professionals and Insider Compensation* ("Fee Guide"), promulgated by the Office of the United States Trustee.  The Retainer will be maintained in Mr. Tierney's regular business account rather than a segregated account.  Mr. Tierney will submit a monthly Professional Fee Statement each month until the Retainer is exhausted.

Second, contemporaneously with the filing of the Application, the Debtors intend to file a motion to authorize procedures (the "Fee Procedures Motion"), which mirror the provisions of the Fee Guide, for the Debtors and all of their professionals, including Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), as general bankruptcy counsel for the Debtors, Mr. Tierney, as CRO, CSA Partners, LLC ("CSA"), as Financial Consultant, Joel Glaser APC ("Glaser"), as Business Litigation Counsel,[5] and counsel for the official committee of unsecured creditors (the

---

[4] A copy of rates of reimbursement of expenses is attached to the Application as Exhibit "2."

[5] The Debtors are contemporaneously filing with the Court, applications to employ Danning Gill, CSA and Glaser.

"Committee), if one is appointed, to receive payments of their accruing fees and costs on a monthly basis.[6]

Subject to the Court's approval of the Fee Procedures Motion, and without limiting the specificity contained therein, the salient terms of the procedures are summarized as follows:

1.      On or before the **20th** day of each month following the month for which compensation and reimbursement of expenses is sought, each professional will file a monthly statement with the Court itemizing the fees and costs incurred by each professional seeking compensation from the estate.  The Professional will serve copies of the monthly statement upon the Debtors, the Office of the United States Trustee, those parties who request special notice in the Debtors' case, and upon any counsel for the committee, if one is appointed or, if not appointed, upon the creditors holding the 20 largest general unsecured claims in this case.

2.      If no objection to the monthly statement is filed and served within ten (**10**) days after the service of the monthly statement is filed, the Debtors may pay: (a) Danning Gill and any professionals employed by a committee 80% of the fees and 100% of the expenses for which payment was sought; and (b) Mr. Tierney. CSA and Glaser 90% of the fees and 100% of the expense for which payment was sought.  Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

3.      If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtors will not pay the applicable professional the amount of the disputed funds, until the objection has been either resolved between the objecting party and the professional on a consensual basis.  If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application.  Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

4.      In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim compensation (including any amounts held back pursuant to paragraphs 2 and 3 above) and reimbursement of expenses not less frequently than every 120 days.  Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

5.      The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

---

[6] Professionals employed in the future by the Debtors and a committee (if formed), with respect to which the Court's order approving such employment will authorize the professional to seek compensation and reimbursement of expenses in accordance with the Fee Procedures Motion.

6.      Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

The Debtors are requesting that the Court approve the employment of Mr. Tierney as CRO and the above procedure for payment of his fees and expenses for the following reasons:  First, given the level of services performed by Mr. Tierney to the Debtors, his hourly rate is reasonable. Second, when Mr. Tierney accepted the engagement with the Company, it was understood that in order for Mr. Tierney to perform the required services, he would need to devote significant amounts of his time and resources to the Company, which he did on a full time basis.  Since the Petition Date, Mr. Tierney has continued to devote his time and resources to the Company on a full time basis.  Third, Mr. Tierney operates a small business and given his full time commitment to the Debtors, any undue delays in receipt of compensation would detrimentally impact Mr. Tierney, just as an employee's failure to receive wages would cause a hardship.  Under the circumstances, the Debtors believe that employment of Mr. Tierney as CRO is in the best interests of the estates and it is appropriate to pay him on a monthly basis.

D.      <u>Name, address and telephone number of person who will provide a copy of the Application</u>

A copy of the Application is appended hereto.  Requests for copies may be made via email to Debtors' proposed counsel, Attn.: Zev Shechtman at Danning, Gill, Israel & Krasnoff, LLP, at , Email: <u>ZS@DanningGill.com</u>.[7]  The address for Debtors' proposed counsel is Danning, Gill, Israel & Krasnoff, LLP, Attn.: Zev Shechtman, 1901 Avenue of the Stars, Suite 450, Los Angeles, California 90067 and the telephone number is (310) 277-0077.

---

[7] In light of the local, state and federal guidelines responsive the COVID-19 pandemic, email communications are highly encouraged.  See, e.g., <u>https://www.cacb.uscourts.gov/coronavirus-covid-19-and-court-operations</u>.

1    **PLEASE TAKE FURTHER NOTICE** that pursuant to LBR 9013-1(o)(1), any creditors

2    or interested parties seeking to oppose the Application must:

3         (1) file and serve a written opposition and request for hearing within fourteen (14) days

4    after the date of service of this notice plus three (3) additional days if you were served by mail or

5    pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F); and

6         (2) serve a copy of the same upon the proposed attorneys for the Debtors at the address

7    listed in the upper left hand corner of the first page of the Application, and upon the Office of the

8    United States Trustee (the "United States Trustee"), located at 915 Wilshire Boulevard, Suite 1850,

9    Los Angeles, California 90017.

10        Pursuant to LBR 9013-1(h), the failure to file a response may be deemed by the Court to be

11   consent to the relief sought.

12

13   DATED:  December 30, 2020             DANNING, GILL, ISRAEL & KRASNOFF, LLP

14

15                                        By:     _/s/ Zev Shechtman_

16                                               ZEV SHECHTMAN
                                                 Proposed Attorneys for Airport Van Rental, Inc.
17                                               and affiliated Debtors and Debtors in Possession

18

19

20

21

22

23

24

25

26

27

28

# APPLICATION

Airport Van Rental, Inc., a California corporation ("AVR California" or the "Company"), and its four affiliated debtors and debtors in possession, Airport Van Rental, Inc., a Georgia corporation, Airport Van Rental, Inc., a Nevada corporation, Airport Van Rental, LLP, a Texas limited liability partnership, and AVR Vanpool, Inc., a California corporation ("AVR Vanpool") (collectively the "Debtors"), respectfully represent as follows:

## A.    Bankruptcy Background

1.    On December 11, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors filed a number of motions seeking typical "first day" orders, including an order directing the joint administration of their chapter 11 cases.  On December 11, 2020, the Court entered an order granting the Debtors' motions to jointly administer the cases.  The Debtors remain in possession of their properties and continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## B.    The Debtors' History and Business Operations

2.    AVR California was founded in 2007 by Yazdan and Kim Irani.  The Iranis founded AVR California because they recognized that car rental companies do not adequately serve the needs of customers who need space for five or more passengers.  Over the last 13 years, the Iranis built the Company (consisting of the five Debtors and some non-Debtors that are no longer operating) into an industry leader in the van rental business in the United States.

3.    Very generally, the Company's business has three components.  *First*, the Company rents vans to the public.  The Company has an online reservation system at www.airportvanrentals.com and accepts bookings through online travel agencies such as Priceline.com.  This first component is referred to as its "retail" business.  *Second*, the Company has contracts with private businesses that need to rent vans to conduct their business.  The Company has been recognized by Amazon as a National Recognized Preferred Vendor in

1   connection with Amazon's "Delivery Service Partner" program.[8] *Third*, the Company has

2   "vanpool" contracts with governmental entities pursuant to which it supplies and maintains vans

3   used by government employees as part of environmentally-friendly vanpool programs.

4         4.      In connection with the vanpool business, in May 2019, AVR California was

5   awarded a 3-year contract for vanpool vehicle leasing and services at LAX and the Van Nuys

6   Airport.  The Company's vans are used as part of an Employee Commute Reduction Program,

7   which is part of an employee benefit program provided by Los Angeles World Airports

8   ("LAWA").  Under the Company's contract with LAWA, the Company may receive revenues of

9   up to $3.6 million over the 3-year term of the contract.  The Company currently is renting

10   approximately 75 vans to LAWA.

11         5.      As part of its contract with LAWA, the Company granted the option of allowing

12   other departments in the City of Los Angeles (the "City") and/or other governmental agencies

13   outside of the City to rent vans using the prices, terms and conditions of the LAWA contract.  In

14   August 2019, AVR California was awarded a 3-year contract by the Los Angeles Department of

15   Water and Power (the "DWP") to rent vans, including a certain type of hybrid van, for the DWP's

16   vanpool program.  Under the contract with the DWP, the Company may receive revenues of up to

17   $4.6 million over the 3-year term of the contract.  AVR California currently is renting

18   approximately 97 vans to the DWP.

19         6.      In the Los Angeles area, the Company also has contracts to supply vans to, among

20   others, the Los Angeles Harbor Department.  The Company often supplies hundreds of vehicles to

21   U.S. Postal Service locations throughout southern California during the holiday period, when its

22   need for vehicles increases.  During the recent election season, AVR California rented

23   approximately 150 vans to Los Angeles County for use in the transportation of election-related

24   materials.  AVR California is able to satisfy these needs because it already has gone through the

25

26         [8] Under the program, delivery persons form small businesses and contract to deliver Amazon

27   packages in Prime-branded blue vans and uniforms.  Amazon negotiated special deals on van
leases with companies such as AVR California, and requires its DSPs to use preferred vendors.

28   The Company is currently renting approximately 200 vans to Amazon DSPs.

1  process of being an approved supplier of vans for various governmental entities, including the City

2  and the County of Los Angeles.

3       7.    The Company has also grown its vanpool business outside of the Los Angeles area.

4  The Company was approved as a vanpool supplier for, among others, the Victor Valley Transit

5  Authority Vanpool Subsidy program and the San Diego Association of Governments (SANDAG)

6  Vanpool Subsidy Program.  In September 2019, AVR Vanpool was awarded a 5-year contract to

7  provide over 200 vehicles to the Dallas Area Rapid Transit ("DART").  Under AVR Vanpool's

8  contract with DART, AVR Vanpool may receive revenues of up to approximately $17 million over

9  the 5-year term of the contract.  AVR Vanpool currently is renting approximately 15 vans to

10  DART.

11       8.    The Company has also entered into contracts to provide vans to private companies,

12  schools and sports teams.  The contracts are typically short term (for example, one to six weeks).

13  but generally have a high continual / recurring renewal rate, which the Company estimates to be

14  approximately 90%.

15

16  **C.**    **Factors Precipitating the Debtors' Chapter 11 Filing**

17       9.    From $3.8 million in 2011, the Company's revenues grew to $39 million in 2019.

18  The Company was poised to continue growing until the COVID-19 pandemic took hold,

19  devastating the retail business which comprised 85% of the Company's revenues in 2019.  The

20  Company, which used to operate in 16 cities in 10 states, now operates in 7 cities in 5 states.  In

21  early 2020, the Company had over 210 employees throughout the United States; today, it has

22  approximately 60.  Like other car rental companies, the Company also cut the size of its fleet, from

23  approximately 2,300 vehicles to 1,100.  Car rental companies cut their fleet size by selling their

24  vehicles through auction.  Because of the large number of vehicles being offered for sale and the

25  few number of vehicles being purchased, the market value of used passenger vehicles dropped.

26  Since the Company is liable to its vehicle financiers for the full acquisition price of a vehicle

27  regardless of how much that vehicle sells for – even if the vehicle is "leased" from the financier –

28  the Company bore the brunt of the decrease in market values.

1630217.3  26988

9

10.     Like Hertz and many other companies that rely heavily on air travelers, the Debtors found themselves in need of bankruptcy relief.  A number of the Company's financiers (including some who are exiting the industry) are pursuing or are threatening to pursue their rights under existing financing arrangements.  The Company has been open with its lenders regarding the Company's need for bankruptcy relief.  As set forth in greater detail below, the Company hired outside professionals, including a Chief Reorganization Advisor, to evaluate the prospects for the Debtors' reorganization or potential sale of their assets (or some of their assets).  In October 2020, the Debtors implemented an "Adequate Protection Program" pursuant to which all financiers have received monthly payments to (a) compensate them for the decrease in value of their collateral, (b) provide interest, at a rate of 6.0% per annum, based on current market values of the vehicles in which they have an interest, and (c) remit proceeds from sales of the vehicles in which they had an interest.  In October and November 2020, the Company paid financing companies an aggregate of approximately $420,000 to compensate them for the decrease in value of the vehicles, $200,000 of interest, and $1.5 million from the sales of vehicles.

**D.     The Debtors' Professionals**

11.     Since 2011, the Debtors' general counsel for business and litigation matters has been Joel Glaser APC ("Glaser").  Glaser has provided services to the Debtors relating to business litigation, employment practices liability, products liability and personal injury liability.  Glaser represents the Debtors, in, or is otherwise familiar with, the Debtors' pending litigation matters.  Subject to Court approval, the Debtors intend to retain Mr. Glaser's firm to continue to represent them as special as-needed business litigation counsel.

12.     On or about September 4, 2020, the Debtors retained Kevin S. Tierney ("Mr. Tierney") as a consultant to evaluate the Debtors' financial situation, advise them as to the best course of action for a business restructuring, and communicate with critical stakeholders in an effort to establish a consensual out-of-court work-out or chapter 11 restructuring plan.  As set forth in this Application and in greater detail below, the Debtors seek to retain Mr. Tierney in the

1  Debtors' bankruptcy cases, as a professional person, with the title of "Chief Reorganization

2  Officer."

3        13.    On or about September 20, 2020, the Debtors retained CSA Partners, LLC ("CSA"),

4  to provide financial advisory and accounting restructuring services.  The principal of CSA is

5  Anthony Scalese, CPA.  CSA has provided, and likely will continue to provide, the majority of the

6  services rendered by CSA to the Debtors.  Subject to Court approval, the Debtors intend to retain

7  CSA as a financial consultant in the Debtors' bankruptcy cases.

8        14.    Messrs. Tierney and Scalese have separate offices but have generally work as a

9  team, together providing a variety of financial consulting and turnaround services needed in this

10  complex chapter 11 case.  Although it is a team effort, Tierney's work tends to be more strategic

11  and oriented toward financial and business planning, while CSA provides the professional

12  accounting and financial advisory work necessary for bankruptcy compliance.

13        15.    On or about October 22, 2020, the Debtors retained Danning, Gill, Israel &

14  Krasnoff, LLP ("Danning Gill"), to provide insolvency-related legal advice.  Subject to Court

15  approval, the Debtors intend to retain Danning Gill as their general bankruptcy counsel in the

16  Debtors' bankruptcy cases.  The attorneys at Danning Gill principally responsible for representing

17  the Debtors in these cases are John N. Tedford, IV, Zev Shechtman and Michael G. D'Alba.

18        16.    For 2018 income tax returns filed by AVR California and related entities, AVR

19  California's outside tax accountant was El Segundo-based Beach Freeman Lim & Cleland, LLP.

20  For its 2019 income tax returns, AVR California used Pasadena-based HKG LLP ("HKG").  The

21  Debtors have not yet determined whether to use HKG, or another firm, as their tax accountant

22  during this bankruptcy case.

23

24  **E.**    **The Debtors' Plan for this Case**

25        17.    Presently, the Debtors intend to sell certain assets, and assign certain liabilities, to a

26  new company that has been or will be formed by certain of the Company's current officers.  Any

27  sale will be subject to Court approval, and likely subject to overbids.

28

18.     The Debtors are evaluating the possibility of a chapter 11 plan that, among other things, (a) treats the Debtors (and possibly some non-Debtors) as one substantively consolidated entity, (b) pays the Debtors' financing companies the full amount of the secured portion of their claims during the same period of time those claims would be paid in the ordinary course of business, and (c) uses future earnings to make distributions to general unsecured creditors over a period of years.  However, absent a major source of new funding, such a plan would require cooperation by substantially all of the financing companies and the consent of unsecured creditors.

19.     To accomplish an orderly liquidation or confirmation of a chapter 11 plan, the Debtors intend to, among other things (a) continue to operate and maintain their business and the assets, including the fleets of vehicles in which the financing companies have an interest, (b) continue to make adequate protection payments to the financing companies in accordance with the Adequate Protection Program and (c) continue to sell vehicles in the ordinary course and pay the net sales proceeds to the financing companies.

## F.     The Debtors' Proposed Retention of Mr. Tierney as Chief Reorganization Officer

20.     Given the important leadership role Mr. Tierney has played to date, the Debtors believe it is essential that Mr. Tierney stay on and be retained as the Debtors' Chief Reorganization Officer ("CRO").[9]  Thus, the Debtors seek to retain Mr. Tierney as the CRO at the expense of the estate.  The CRO is expected to render, among other services, the following services to the Debtors, subject to the Court's approval:

(a)     Consult, strategize and collaborate with the Debtors, Debtors' bankruptcy counsel, the Debtors' Financial Consultant[10] and other professionals of the Debtors as necessary to address the Debtors' business and financial needs;

(b)     Develop a detailed Plan of Reorganization in consultation with the Debtors and their other professionals; and

(c)     Communicate with critical creditors, vendors and stakeholders to obtain their cooperation and support of the Debtors' restructuring.

---

[9] Notwithstanding the use of the term "CRO," the Debtors are seeking to employ Mr. Tierney pursuant to section 327 of the Bankruptcy Code with compensation subject to sections 330 and 331, and modified only as set forth herein and the accompanying "Knudsen" motion, to allow for monthly payment procedures.

[10] As set forth above, the Debtors intend to retain CSA Partners, LLC as their Financial Consultant.

**G.    Qualifications of Mr. Tierney**

21.    The Debtors propose to retain Mr. Tierney, as their CRO, effective as of December 11, 2020.  Mr. Tierney has extensive experience in matters of this type, including extensive experience in bankruptcy and business matters and has become well familiar with the financial affairs of the Debtors.  The breadth of experience and length of service in the financial community of Mr. Tierney, is described in his resume, a copy of which is attached as Exhibit "1" hereto.

**H.    Arrangements for Compensation**

22.    Prior to the Petition Date, Mr. Tierney received a retainer of $ 48,510.00 as an advance against fees and costs to be incurred by Mr. Tierney after the commencement of the case (the "Retainer").

23.    The Debtors propose to retain Mr. Tierney as CRO on an hourly basis, at his usual billing rate of $200.00/hour, plus reimbursement of out-of-pocket expenses,[11] and to compensate Mr. Tierney on the following basis:

24.    First, with respect to the $48,510.00 Retainer, Mr. Tierney will draw down on the Retainer in accordance with the *Guide to* Applications *for Retainers, and Professionals and Insider Compensation* ("Fee Guide"), promulgated by the Office of the United States Trustee. The Retainer will be maintained in Mr. Tierney's regular business account rather than a segregated account.  Mr. Tierney will submit a monthly Professional Fee Statement each month until the Retainer is exhausted.

25.    Second, contemporaneously with the filing of the Application, the Debtors intend to file a motion to authorize procedures (the "Fee Procedures Motion"), which mirror the provisions of the Fee Guide, for the Debtors and all of their professionals, including Danning Gill, as general bankruptcy counsel for the Debtors, Mr. Tierney as CRO, CSA, as Financial Consultant, Glaser, as Business Litigation Counsel,[12] and counsel for the official committee of unsecured creditors

---

[11] A copy of rates of reimbursement of expenses is attached to the Application as Exhibit "2."

[12] The Debtors are contemporaneously filing with the Court, applications to employ Danning Gill, CSA and Glaser.

1   ("committee), if one is appointed, to receive payments of their accruing fees and costs on a monthly

2   basis.[13]

3       26.    Subject to the Court's approval of the Fee Procedures Motion, and without limiting

4   the specificity contained therein, the salient terms of the procedures are summarized as follows:

5       (a)    On or before the **20th** day of each month following the month for which
        compensation and reimbursement of expenses is sought, each professional will file a
6       monthly statement with the Court itemizing the fees and costs incurred by each
        professional seeking compensation from the estate.  The Professional will serve
7       copies of the monthly statement upon the Debtors, the Office of the United States
        Trustee, those parties who request special notice in the Debtors' case, and upon any
8       counsel for the committee, if one is appointed or, if not appointed, upon the
        creditors holding the 20 largest general unsecured claims in this case.

9

10      (b)    If no objection to the monthly statement is filed and served within ten **(10)**
        days after the service of the monthly statement is filed, the Debtors may pay: (a)
11      Danning Gill and any professionals employed by a committee 80% of the fees and
        100% of the expenses for which payment was sought; and (b) Mr. Tierney. CSA and
12      Glaser 90% of the fees and 100% of the expense for which payment was sought.
        Such payments will be made on an interim basis and will be subject to the filing of
13      interim and final fee applications.

14      (c)    If a timely written objection to the monthly statement is filed by a party-in-
        interest, the Debtors will not pay the applicable professional the amount of the
15      disputed funds, until the objection has been either resolved between the objecting
        party and the professional on a consensual basis.  If the parties do not reach a
16      consensual resolution of the objection, the professional may either (a) set the matter
        for hearing on at least 14 days' notice to the objecting party, or (b) forego payment
17      of the disputed amount and seek approval of such disputed amount in connection
        with its next interim, or final, fee application. Notwithstanding any objection to a
18      monthly statement, the professional may be paid any undisputed amount of fees and
        costs represented by a monthly statement.

19      (d)    In accordance with § 331 and applicable rules and guidelines, each
        professional will file and serve (in accordance with the Bankruptcy Code and federal
20      and local rules) an application for Court approval of interim compensation
        (including any amounts held back pursuant to paragraphs (b) and (c) above) and
21      reimbursement of expenses not less frequently than every 120 days.  Any
        professional who fails to file an application for interim compensation when due will
22      be ineligible to receive further monthly payments of fees and expenses pursuant to
        the filing of monthly statements as provided above, until such professional submits
23      an application for interim compensation which is then ruled upon by the Court.

24      (e)    The pendency of an objection to payment of compensation or expenses
        requested by a professional in a particular monthly statement or interim fee
25      application will not prevent such professional from receiving payment of fees and
        expenses pursuant to future monthly statements served in accordance with these
26      procedures, except as otherwise ordered by the Court.

27  _____
    [13] Professionals employed in the future by the Debtors and a committee (if formed), with respect to which the
    Court's order approving such employment will authorize the professional to seek compensation and reimbursement of
28  expenses in accordance with the Fee Procedures Motion.

(f)      Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

27.      The Debtors are requesting that the Court approve the employment of Mr. Tierney as CRO and the above procedure for payment of his fees and expenses for the following reasons: First, given the level of services performed by Mr. Tierney to the Debtors, his hourly rate is reasonable.  Second, when Mr. Tierney accepted the engagement with the Company, it was understood that in order for Mr. Tierney to perform the required services, he would need to devote significant amounts of his time and resources to the Company, which he did on a full time basis. Since the Petition Date, Mr. Tierney has continued to devote his time and resources to the Company on a full time basis.  Third, Mr. Tierney operates a small business and given his full time commitment to the Debtors, any undue delays in receipt of compensation would detrimentally impact Mr. Tierney, just as an employee's failure to receive wages would cause a hardship.  Under the circumstances, the Debtors believe that employment of Mr. Tierney as CRO is in the best interests of the estates and it is appropriate to pay him on a monthly basis.

## I.    <u>Disinterestedness of Mr. Tierney</u>

28.      As of the date of this Application, to the best of the Debtors' knowledge and after consideration of the disclosures in the Statement of Disinterestedness filed concurrently herewith, the Debtors believe that Mr. Tierney is a disinterested person as that term is defined in 11 U.S.C. § 101(14), is not connected with the Debtors, their creditors, any other party in interest, their attorneys and accountants, or to the estates, and has no relation to any bankruptcy judge presiding in this district, the Clerk of the Court or any relation to the United States Trustee in this district, or any person employed at the Court or the Office of the United States Trustee, nor does Mr. Tierney, represent or hold an adverse interest with respect to the Debtors, any creditor, or to the estates, *except to the extent that*: prior to the Petition Date, Mr. Tierney was retained by the Debtors as a consultant to evaluate the Debtors' financial situation, among other things, as set forth above.

1        29.    Mr. Tierney has not been retained to assist any entity or person other than the

2    Debtors on matters relating to, or in connection with, the bankruptcy cases.

3        30.    In addition, the Debtors do not owe Mr. Tierney any amount for services performed

4    or expenses incurred prior to the Petition Date and thus, Mr. Tierney is not a prepetition creditor of

5    the Debtors.

6

7        WHEREFORE, the Debtors requests that the Court enter an order authorizing them to

8    employ Mr. Tierney as their CRO, effective as of December 11, 2020, as an administrative expense

9    in this bankruptcy case, and for such other and further relief as may be determined just and proper.

10

11    DATED:  December _30_, 2020                    Airport Van Rental, Inc. and affiliated Debtors and
                                          Debtors in Possession.

12

13

14                                          By:  _____

15                                                 Yazdan Irani, Chief Executive Officer

16

17

18

19

20

21

22

23

24

25

26

27

28

1630217.3  26988

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
## OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014

1.    Name, address and telephone number of the professional ("the Professional" or "the Firm") submitting this Statement:  See Resume attached as  Exhibit "1" hereto.

Kevin S. Tierney
31 Old Pasture Way
Hendersonville, NC 28739
Cell: (203) 996-6888

2.    The services to be rendered by the Professional in this case are (specify):

See paragraph  of the Application.  20

3.    The terms and source of the proposed compensation and reimbursement of the Professional are (specify):

See paragraphs 22-27 of the Application and Exhibit "2" for Rates of Reimbursement of Expenses attached hereto.

4.    The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

Prior to the Petition Date,  I received a retainer $48,510.00 as an advance against fees and costs to be incurred by me, Kevin S. Tierney ("Tierney") as Chief Reorganization Officer ("CRO"), after the commencement of the case (the "Retainer").  I will submit a monthly Professional Fee Statement each month until the retainer is exhausted.

In addition, contemporaneously with the filing of the Application, the Debtors intend to file a motion to authorize procedures (the "Fee Procedures Motion"), which mirror the provisions of the Fee Guide, for the Debtors and all of their professionals, including the Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), as general bankruptcy counsel for the Debtors, Tierney, as CRO, CSA Partners, LLC ("CSA"), as Financial Consultant, Joel Glaser APC ("Glaser"), as Business Litigation Counsel, and counsel for the official committee of unsecured creditors ("committee"), if one is appointed, to receive payments of their accruing fees and costs on a monthly basis.

Subject to the Court's approval of the Fee Procedures Motion, and without limiting the specificity contained therein, the salient terms of the procedures are summarized as follows:

(a)    On or before the **20th** day of each month following the month for which compensation and reimbursement of expenses is sought, each professional will file a monthly statement with the Court itemizing the fees and costs incurred by each professional seeking compensation from the estate.  The Professional will serve copies of the monthly statement upon the Debtors, the Office of the United States Trustee, those parties who request special notice in the Debtors' case, and upon any counsel for the committee, if one is appointed or, if not appointed, upon the creditors holding the 20 largest general unsecured claims in this case.

(b)    If no objection to the monthly statement is filed and served within ten **(10)** days after the service of the monthly statement is filed, the Debtors may pay: (a) Danning Gill and any professionals employed by a committee 80% of the fees and 100% of the expenses for which payment was sought; and (b) Tierney. CSA and Glaser 90% of the fees and 100% of the expense for which payment was sought.

Such payments will be made on an interim basis and will be subject to the filing of interim and final fee applications.

(c)     If a timely written objection to the monthly statement is filed by a party-in-interest, the Debtors will not pay the applicable professional the amount of the disputed funds, until the objection has been either resolved between the objecting party and the professional on a consensual basis. If the parties do not reach a consensual resolution of the objection, the professional may either (a) set the matter for hearing on at least 14 days' notice to the objecting party, or (b) forego payment of the disputed amount and seek approval of such disputed amount in connection with its next interim, or final, fee application. Notwithstanding any objection to a monthly statement, the professional may be paid any undisputed amount of fees and costs represented by a monthly statement.

(d)     In accordance with § 331 and applicable rules and guidelines, each professional will file and serve (in accordance with the Bankruptcy Code and federal and local rules) an application for Court approval of interim compensation (including any amounts held back pursuant to paragraphs (b) and (c) above) and reimbursement of expenses not less frequently than every 120 days. Any professional who fails to file an application for interim compensation when due will be ineligible to receive further monthly payments of fees and expenses pursuant to the filing of monthly statements as provided above, until such professional submits an application for interim compensation which is then ruled upon by the Court.

(e)     The pendency of an objection to payment of compensation or expenses requested by a professional in a particular monthly statement or interim fee application will not prevent such professional from receiving payment of fees and expenses pursuant to future monthly statements served in accordance with these procedures, except as otherwise ordered by the Court.

(f)     Neither the payment of, nor the failure of any party to object to, fees and expenses requested in a monthly statement will in any way act as a waiver of the right to later object to such fees and expenses, or otherwise bind any party or the Court with respect to the subsequent consideration of the interim or final allowance of fees and expenses of any professional.

5.     The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify):

Conflicts check of all known creditors and potential creditors of the Debtors.

6.     The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

Based on the conflict check, Kevin S. Tierney does not currently represent any creditor or other party in interest.

As stated in the Application, Kevin S. Tierney was previously retained by the Debtors on September 4, 2020, as a consultant to evaluate the Debtors' financial situation, among other things.

Kevin S. Tierney is not a creditor of the estate.

7.    The Professional is not a creditor, an equity security holder or an insider of the debtor, except as follows (specify, attaching extra pages as necessary):

       None.

8.    The Professional is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtors.

9.    The Professional does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, except as follows (specify, attaching extra pages as necessary):

       None.

10.   Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

       Kevin S. Tierney
       31 Old Pasture Way
       Hendersonville, NC 28739
       Cell: (203) 996-6888

11.   The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

       None.

12.   Total number of attached pages of supporting documentation: 6.

13.   After conducting or supervising the investigation described in paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that paragraphs 6 through 9 and 11 are stated on information and belief.

Executed on December ___, 2020, at Hendersonville, NC.

                                   [Signature to Follow]
                                   KEVIN S. TIERNEY

EXHIBIT 1



Kevin S. Tierney
Curriculum Vitae
Page 1 of 5
August 9, 2017

**31 Old Pasture Way**
**Hendersonville, NC 28739**
**Cell: (203) 996-6888**
**kevie48@gmail.com**



| Chairman of the Board |
| FernLeaf Community Charter School |
| March, 2015 thru July, 2017 |

Fletcher, North Carolina

- After moving to North Carolina, assumed leadership role in March, 2015 and elected Chairman in August, 2015
- Identified school site and negotiated the gift of the 27 acre parcel valued at $ 900,000
- Negotiated an additional $ 200,000 + of "in-kind" gift of services from General Contractor and other professionals
- Conceived the site-plan, designed campus details with professionals & obtained P&Z approval in 5 months
- Underwrote the financing plan, negotiated and closed a $ 2.6 Million construction/permanent financing commitment and closed in Feb, 2016
- Completed all required site and infrastructure work &  took delivery of first (K-3) Modular bldg. on 4/27/16
- Finalizing site and building details:  Certificate of Occupancy expected by 6/28/16, teachers arrive in July, School opens 8/17/16
- Restructured Board into Operating Committees with clear responsibilities and accountabilities  and turned control over to management



**Chief Restructuring Officer**
**May, 2013 thru December, 2014**
**[A Workout Solutions Inc. Client]**

**Norwalk, Connecticut**

At the request of the family shareholders, Kevin  S.  Tierney (as President of Workout Solutions,  Inc.)   assumed the role of Chief Restructuring Officer (CRO) at the behest of the owners and all the key creditors. Reorganized and streamlined six (6) family companies that were collectively insolvent by approximately ($ 10 Million).   Conveyed business back to the family in December, 2014.



**Organized in 2011 and sold in March 2013**
**Chief Executive Officer:  The Sharps Rifle Company, Inc.**
**[A Workout Solutions, Inc. Client]**

**Wyoming**

Kevin S. Tierney (as President of Workout Solutions, Inc.) took leadership of an insolvent client at his request.  Developed and implemented an orderly liquidation with the consent of the senior bank creditor.  With the remaining remnants of the enterprise, then became the founder and Chief Executive Officer of The Sharps Rifle Company as a spin-off of this insolvent gun/ammunition manufacturer with operations in Wyoming and South Dakota.  In this capacity, successfully arranged $ 7 Million of debt and equity commitments to launch the new operations.   This responsibility included the assemblage of the management team and the sourcing of all of the equity, subordinated debt, and senior financing. Sold the business to a private equity group prior to the formal launch of the company with the business plan now in place.

Kevin S. Tierney
Curriculum Vitae
Page 2 of 5
August 9, 2017

31 Old Pasture Way
Hendersonville, NC 28739
Cell: (203) 996-6888
kevie48@gmail.com

CopperBeech Inn
4 Star Bed and Breakfast
Ivoryton, Connecticut

> **Bankruptcy Court Approved Chief Restructuring Officer
> Sept, 2009 thru early 2011
> [A Workout Solutions, Inc. Client]**

At the behest of the bank Senior Creditor and the owner, assumed the role of court appointed Chief Restructuring Officer on this enterprise dealing with the clients' two insolvent businesses and his personal insolvency.



> **Assumed Leadership in Oct. 2007 – Negotiated Sale
> in July, 2008
> Chief Executive Officer: The Dixie Group Inc. and its
> subsidiary:  Dixie Box and Crating Company
> [A Workout Solutions, Inc. Client]**

**11 offices, 225 employees in 7 States:**

Assumed the role of emergency CEO for Dixie Box and Crating Company in October, 2007 (concurrent with the collapse   of the economy and financial markets in Oct. 2007) for this Workout Solutions, Inc. who had been a client for the prior 2 years.  The sole shareholder had acquired this   company and had structured   the acquisition as a leveraged buy-out. His prior Executive leadership team had grown the company revenues over the succeeding four years from a revenue pace of $ 14MM to a $ 31MM revenue "run rate" by mid, 2007. Unfortunately, this leadership team had lost money throughout that entire period and by the summer of 2007; the company had lost a total of ($ 6 Million) over that 4 year period. Break-even had now risen to $ 34 Million and the company was now losing money at a pace of ($ 2.5 Million per annum) prior to my assumption of the CEO role.

I assumed this role of emergency CEO concurrent with the capital markets seizing up in October, 2007 as revenues plummeted nearly overnight from a $ 31 Million pace to a $ 19 Million run rate within six months. If financial stability had not been immediately corrected, losses from operations per month would have been in the range of ($ 400,000) per month.

During my leadership over the succeeding ten (10) months, the following was accomplished:

- Terminated the top three of the leadership team:  prior CEO, prior Pres and COO, and the CFO
- Consolidated the CEO and COO role under myself and replaced the CFO
- Negotiated nationwide  rent savings of over  $ 3 Million  per annum and implemented another $ 2.5 Million in operating cost reductions
- Closed 3 offices and sold one office and implemented numerous financial and operating changes to the company which resulted in financial stabilization and break even by the time the company had settled down at a $ 17 Million sales " run rate"
- Having stabilized the company in seven months, I developed a re-organization plan for this insolvent company approved endorsed and recommended by highly experienced insolvency legal counsel.  The plan was  scheduled to close in July, 2008 as an asset sale to the largest player in this industry that had a $ 100 Million annualized run rate that would have resulted in the following benefits to the sole shareholder:

   1. Repayment or assumption of   all of the   sole shareholders $ 12 Million in Senior and Subordinated Debt that had been  personally guaranteed and  which  were further secured by unrelated personal assets

   2. A consulting arrangement for the shareholder that would have allowed the shareholder to potentially recapture as much as 60% of his cumulative $ 8 Million capital investment over time vs. a 100% loss under more traditional means.

      However, the night before the closing, the sole shareholder declined to close the transaction.  In recognition   that I could do nothing further for the best interests of the shareholder and could not convince the shareholder    to proceed with the sale, I resigned to allow the shareholder to implement his plan which  I  had  felt  was  doomed.

*Post Script: The shareholder managed the company for another eighteen months until such time as the company had to shut down all of its operations in its entirety resulting in a 100% loss to the shareholder's entire capital investment and/or personal guarantees that had exceeded $ 15 Million.*



Kevin S. Tierney
Curriculum Vitae
Page 3 of 5
August 9, 2017

**31 Old Pasture Way**

**Hendersonville, NC 28739**

**Cell: (203) 996-6888**

kevie48@gmail.com



New Haven, Connecticut Area

| | |
|---|---|
| | **1989 thru December, 2014**<br>**Founder and President of Workout Solutions, Inc.   (WSI)** |

Offered financial consulting to solve complex borrower/creditor relationships for entrepreneurs, banks, creditors, law firms and other professionals. Over the last 43 years, have been involved with over $ 2.5 Billion of troubled financial obligations. The first 17 years of my career (1970-1987) was as an officer in commercial banking for Hartford National Bank, Union Trust, and then Citytrust in Bridgeport Connecticut rising from Executive Trainee to Senior Vice President of all Underwriting, Workout, and Loan Administration for a $ 2 Billion asset commercial Bank and became President of two bank subsidiaries which I had founded capitalized by $ 8 Million of equity and $ 50 Million of Senior debt.

Experienced and recognized as an expert witness in Civil or Criminal Matters before:

- Various State and Federal Courts regarding insolvency and financial issues on   complex cases
- The United States Congressional Banking Committee
- The Securities Exchange Commission, Justice Department and FBI

**Notable clients included:**

- Design and implementation of a workout plan involving $ 300 Million in debt owed to  44 financial institutions facing $100-$200 Million in potential loss
- Consensual Receiver $ 55 Million in secured and unsecured debt – Insolvent high rise office bldg. partnership
- Bankruptcy Court approved Chief Restructuring Officer for a five-star hospitality enterprise in Connecticut.
- Experienced in the firearms industry since 2006 [Detailed experience is available upon request]
- Been involved with over $ 2.5 Billion in financial matters over the last 40 years in numerous industries



| | |
|---|---|
| | **1989 – December, 2014**<br>**Founder and President of Connecticut Business Credit, Inc.**<br>**A Sister Company to Workout Solutions, Inc.** |

New Haven, Connecticut Area

Created a sister company to Workout Solutions, Inc. assisting viable businesses in analyzing  corporate financing needs  and determining the best loan structure that fits within the strategic needs of the client and the current conditions in the capital markets. We would then prepare a comprehensive underwriting package in the format and language required by the capital markets and target prospective lenders that would react positively to the loan request. Mr. Tierney developed a reputation among bank lenders that they could always expect to see a comprehensive "turn-key" underwriting package.    Skill Set ……..

    a) Commercial and Industrial Loans, or Commercial Mortgages typically between $ 1- $ 20 Million.
       Underwrote, placed, and closed loans as high as $ 35 Million.
    b) Underwrote, placed, and closed SBA loans between $ 100,000 and $ 2 Million
    c) Underwrote, placed and  closed receivable, factoring, inventory & equipment financing
    d) Proficient in unusual or complicated  (including multi-phase)  financing

**Spectrum Mortgage Bankers, Inc.**
**Licensed Mortgage Banker/Broker**
New Haven, Connecticut Area

| | |
|---|---|
| | **Founder and President**<br>**Spectrum Mortgage Bankers, Inc.  (SMB)  1994 – 1999**<br>(as a complimentary service to the Connecticut Business Credit, Inc.<br>and Workout Solutions, Inc. operations) |

As an accommodation to its commercial clientele, Mr. Tierney formed Spectrum Mortgage Bankers in 1994 to offer a full array of fixed and variable residential loans, both conforming and non-conforming to better serve the needs of his commercial clients. Stopped offering this service in 1999 due to the financial disarray in the Capital Markets.



**31 Old Pasture Way**

**Hendersonville, NC 28739**

**Cell: (203) 996-6888**

kevie48@gmail.com

| | |
|---|---|
| Equity Release Corporation<br>**Direct Residential Mortgage Lender**<br>**Regulated by Conn. Bank Commissioner**<br>New Haven, Connecticut Area | **Founder and President**<br>**Equity Release Corporation (ERC)    1987 – 1990** |

Founded Equity Release Corporation (ERC) as a licensed and regulated consumer second mortgage loan company in Connecticut. Financing was provided in the forms of bank lines from nineteen (19) Connecticut community banks.  Due to the 1989 – 1992 recession. Mr. Tierney decided to focus exclusively on Connecticut Business Credit, Inc. and Workout Solutions, Inc. and closed this operation.

### Banking Career:  1970 - 1987

## Citytrust Bancorp, Inc.  (1976-1987)

| | |
|---|---|
| 1985 - 1987 | <u>**President and Founder of the second subsidiary of Citytrust Bancorp, Homeowners Mortgage Company,  Inc.(HMC).**</u> |

- Capitalized with $ 1  Million
- Originated over $ 30 Million in consumer second mortgages.
- Return on Average Assets exceeded  2.8%
- Return on Average Equity exceeded 25%.
- Remained as President of Capital Impact and managed both subsidiaries (see below).

| | |
|---|---|
| 1984 - 1987 | <u>**President and Founder of the first subsidiary of Citytrust Bancorp, Capital Impact Corporation**</u><br>(a regulated and licensed Small Business Investment Company [SBIC]) |

- Capitalized with $ 10  Million
- Bank Lines of $ 10  Million
- Return on Average Assets exceeded  2.5%
- Return on Average Equity exceeded 25%.

| | |
|---|---|
| 1976 - 1984 | <u>**Senior Vice President, Loan Administration**</u> |

- Organized Loan Administration in  1976
- Assumed Control of $ 100 Million in classified assets
- Established  bank-wide loan  policies and procedures
- Rebuilt the Bank's Asset Quality Regulatory Camel Rating from four (4) to (1) in four years and then maintained the Bank's Regulatory Camel Rating # 1 for Asset Quality during the balance of my  tenure.
- Supervised
  - Credit Department, Loan Review Department, Loan Documentation (paralegal) Department
  - Workout  Department  (Commercial), Collections Department (Retail)
  - Recovery Department (Charge-off recovery), Loan Processing Department (Computer Input)
  - Secretary to the Bank Board  of Directors
- Chairman of the Loan Quality  Committee
- Promoted in 1984 to form the bank's  first subsidiary company –  Capital  Impact

## Union Trust Bancorp, Inc.  (Oct. 1973-1976)

| | |
|---|---|
| 1973-1976 | <u>**Assistant Vice President, Loan Administration**</u> |

- Founded  and Managed the Loan  Workout Department
- Managed the Loan  Review Department
- Previous role:   Assistant Treasurer and commercial loan officer.

Kevin S. Tierney
**Curriculum Vitae**
**Page 5 of 5**
**August 9, 2017**

**31 Old Pasture Way**

**Hendersonville, NC 28739**

**Cell: (203) 996-6888**

**kevie48@gmail.com**



**Hartford National Bank & Trust, Inc. (1970 – Oct. 1973)**

1970 – 1973                    <u>Officers Assistant</u>
                              <u>Credit Manager, New Haven office</u>
                              <u>Jr. Credit Manager, Branch Manager, Executive Trainee</u>

**Education:**    BS    Finance Old Dominion University, Norfolk, Virginia        1970
              MBA    Finance        University of New Haven            1975
              MBA    Finance        Rutgers University - Banking        1982
                          (Completed all but my thesis at Rutgers)

**Personal**:    Born:    August 16, 1948
              Navy dependent: 8 schools throughout USA and Japan by the time I went to college
                          High School Freshman Year        Yokohama, Japan
                          High School and College:        Norfolk, Virginia
                          Business Career:        Connecticut 1970-2014
                          Semi-retired:        North Carolina to present
              Married 44 years, with three children, and eight grandchildren
              Spouse retired in Aug, 2014 – was a Day Care Teacher at Yale New Haven Hospital Day Care
              Connecticut National Guard 1970-1976:    First Lieutenant

**Client, Banking, and Legal
References Available Upon Request**

000025

EXHIBIT 2

## <u>RATES OF REIMBURSEMENT OF EXPENSES</u>

Reprographic Expense (Photocopy, Scan, Print)......................................................$ .20 per page

Facsimile - Incoming ..................................................................................$ .20 per page

Facsimile - Outgoing...................................................................................$1.00 per page

Mileage ..........................................................IRS Rate for Business Use (currently 0.58 per mile)

Telephone.......................................................................................................Actual Cost

Postage ...........................................................................................................Actual Cost

Messengers......................................................................................................Actual Cost

Overnight Mail................................................................................................Actual Cost

On-line Computer Research...........................................................................Actual Cost

Filing Fees.......................................................................................................Actual Cost

Deposition or Witness Fees ............................................................................Actual Cost

Parking ...........................................................................................................Actual Cost

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): <u>NOTICE OF APPLICATION AND APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION TO EMPLOY KEVIN S. TIERNEY, AS THEIR CHIEF REORGANIZATION OFFICER; AND STATEMENT OF DISINTERESTEDNESS</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>December 30, 2020</u>  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  <u>SERVED BY UNITED STATES MAIL</u>**: On (*date*)  <u>December 30, 2020</u> , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| December 30, 2020 | Vivian Servin | */s/ Vivian Servin* |
| *Date* | *Printed Name* | *Signature* |

1630542.1  7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

**1.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>**

Michael G D'Alba on behalf of Debtor AVR Vanpool, Inc., a California corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, Inc., a California corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, Inc., a Georgia corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, Inc., a Nevada corporation
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Michael G D'Alba on behalf of Debtor Airport Van Rental, LLP., a Texas limited liability partnership
mdalba@DanningGill.com, DanningGill@gmail.com;mdalba@ecf.inforuptcy.com

Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
eryk.r.escobar@usdoj.gov

Evelina Gentry on behalf of Creditor United Rental Group, LLC f/k/a Mile Fleet, LLC
evelina.gentry@akerman.com, rob.diwa@akerman.com

Lydia A Hewett on behalf of Debtor Airport Van Rental, LLP., a Texas limited liability partnership
lydia.hewett@cpa.state.tx.us

Alan Craig Hochheiser on behalf of Creditor AmTrust North America, Inc. on behalf of Wesco Insurance Company
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Courtney J Hull on behalf of Interested Party Courtesy NEF
bk-chull@oag.texas.gov, sherri.simpson@oag.texas.gov

Matthew F Kye on behalf of Creditor Sumitomo Mitsui Finance and Leasing Co. Ltd.
mkye@kyelaw.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Haleh C Naimi on behalf of Creditor 1st Source Bank
hnaimi@advocatesolutionsinc.com

Tom Roddy Normandin on behalf of Creditor AFC CAL, LLC
tnormandin@pnbd.com, srichards@pnbd.com;cathyjones@pnbd.com;msmigura@pnbd.com

Zev Shechtman on behalf of Debtor AVR Vanpool, Inc., a California corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor Airport Van Rental, Inc., a California corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor Airport Van Rental, Inc., a Georgia corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Debtor Airport Van Rental, Inc., a Nevada corporation
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

1630542.1   7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

Zev Shechtman on behalf of Debtor Airport Van Rental, LLP., a Texas limited liability partnership
zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Richard A Solomon on behalf of Creditor Hitachi Capital America Corp.
richard@sgswlaw.com

John N Tedford, IV on behalf of Debtor Airport Van Rental, Inc., a California corporation
jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Glenn S Walter on behalf of Creditor Union Leasing, Inc.
gwalter@honigman.com

Larry D Webb on behalf of Interested Party INTERESTED PARTY
Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

2. **SERVED BY U.S. MAIL**

Debtor and Debtor-in-Possession
Airport Van Rental, Inc., a California
corporation
12911 Cerise Avenue
Hawthorne, CA 90250

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

20 LARGEST

1st Source Bank - PPP
Attn David W Cripe
100 N Michigan Street 3rd Fl
South Bend, IN  46601

Merchants Fleet
Attn Robert Singer
14 Central Park Drive 1st Floor
Hooksett, NH  3106

United Leasing Inc
Attn Rebecca S. Korba, IRP
Paralegal
3700 Morgan Ave
Evansville, IN  47715

Georgia Department of Revenue
Bankruptcy Section
1800 Century Blvd NE Ste 9100
Atlanta, GA  30303-1751

Automotive Finance Corporation
Attn Josh Risch
11299 N Illinois Street
Carmel, IN  46032

Brady Ervin and David Conn
4901 Wilkinson Blvd
Charlotte, NC  28208

California Department of Tax
and Fee Administration
1015 Ave Of Science  Ste 200
San Diego, CA  92128-3434

Carlos Simon
c/o David Spivak Esq
The Spivak Law Firm
16530 Ventura Blvd Suite 203
Encino, CA  91436

City Of Atlanta Dept Of Aviation
Attn:  John Selden, Airport Gen'l
Mgr.
6000 N Terminal Pkwy
Atlanta, GA  30320

Comerica Bank, Curtis C. Farmer,
Chairman, President and CEO
Department #166901
1717 Main Street
Dallas, TX  75201

Expedia Inc
1111 Expedia Group Way W
Seattle, WA  98119

Hincklease
Attn Brian Baker
2305 South Presidents Drive
Suite F
West Valley City, UT  84120

1630542.1   7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      **F 9013-3.1.PROOF.SERVICE**

Hitachi Capital America Corp
Attn Carol Owen
800 Connecticut Ave
4th Floor N
Norwalk, CT  06854

Jeffery A Johnson, Attys. for 1st Source
Bank
May Oberfell Lorber
302 S. Front Street, Suite C
Dowagiac, MI  49047

Jeffery A Johnson, Attys. for 1st
Source Bank
May Oberfell Lorber
4100 Edison Lakes Parkway Suite
100
Mishawaka. IN  46545

Juana Becerra, Cruz Becerra
Daniel Becerra & Adrian Becerra
c/o Eric Bershatisk
15233 Ventura Blvd Ste 707
Sherman Oaks, CA  91403

Jules & Associates
Attn Ryan Gonzales
515 South Figueroa Street
Suite 1900
Los Angeles, CA  90071

Michael Q Wallin Esq
26000 Towne Centre Drive Ste
130
Foothill Ranch, CA  92610

Penrod Keith, Shareholder, Attys. for
Hincklease
Dentons Durham Jones Pinegar P.C.
111 South Main Street, Suite 2400
Salt Lake City, UT  84111

Pep Boys
Attn Laika Prince
3111 W Allegheny Ave
Philadelphia, PA  19132-0445

Rockpile Capital LLC
27127 Calle Arroyo Suite 1910
San Juan Capistrano, CA  92675

Selig Leasing Company
Attn Kent Boskovich
2510 S 108th St Suite A
Milwaukee, WI  53227

Sutton Leasing Inc (Michigan)
Attn Benjamin Smith
3555 East 14 Mile Road
Sterling Heights, MI  48310

Union Leasing Inc (Illinois)
Attn Roger Setzke
425 N Martingale Rd 6th Floor
Schaumburg, IL  60173

United Mile Fleet
a/k/a United Rental Group LLC
PO Box 5225
Evansville, IN  47716-5225

United Mile Fleet LLC
a/k/a United Rental Group LLC
c/o Akerman LLP attn: Erica Gomer
350 East Olas Blvd. Ste 1600
Fort Lauderdale, FL  33301

United Mile Fleet LLC
a/k/a United Rental Group LLC
c/o Akerman LLP/Joshua R
Mandell
601 West Fifth St Ste 300
Los Angeles. CA  90071

Wells Fargo Bank, N.A.
1717 Grant Street
Denver, CO  80203

Wesco Insurance Co
c/o Aires Law Firm
6 Hughes Suite 205
Irvine, CA  92618

Bank of the West
Attn:  C T Corporation System,
Agent for Service of Process
818 W. Seventh St., Suite 930
Los Angeles, CA  90017

Bank of the West
Nandita Bakhshi, President and CEO
180 Montgomery Street, 25th Floor
San Francisco, CA  94104

Wells Fargo Bank, N.A.
Charles W Sharf, President and CEO
420 Montgomery Street
San Francisco, CA  94104

Wells Fargo Bank, N.A.
Attn:  CSC-Lawyers Incorporating
Service, Agent for Service of
Process
2710 Gateway Oaks Drive, Suite
150N

Sumitomo Mitsui Finance and Leasing
Company, Ltd.
CSC Lawyers Incorporation
Service,Agent for Service of Process
251 Little Falls Drive

Sumitomo Mitsui Finance and Leasing
Company, Ltd.
Masaki Tachibana, President and CEO
666 Third Avenue
New York, NY  10017

United States Attorney's Office
Civil Process Clerk
300 N. Los Angeles St., Room
7516
Los Angeles, CA  90012

U. S. Small Business Administration
Office of the General Counsel
312 N. Spring Street, 5th Floor
Los Angeles, CA  90012

United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC  20044

1st Source Corporation
Attn:  Andrea G. Short, Registered
Agent
100 N. Michigan St., 3rd Floor
South Bend, IN  46601

1630542.1  7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Comerica Bank
Attn: Corporate Creations Network, Inc.,
Agent for Service of Process
4640 Admiralty Way, 5th Floor
Marina del Rey, CA  90292

Allen Brotherton Knox Esq, Attys. for
Brady Ervin and David Conn
Knox Brotherton Knox & Godfrey
816 E Trade St, PO Box 30848
Charlotte, NC  28230

Wesco Insurance Co
59 Maiden Lane 43rd Floor
New York, NY  10038

Nevada Department of Taxation
Attn:  Randy Asbell
2550 Paseo Verde Pkwy #180
Henderson, NV  89074

Attn: Monique Parker
Texas Controller Office
Lyndon B. Johnson State Office Bldg
111 East 17th Street 9th Floor
Austin, TX  78774

Hampton Dunson
c/o Gabroy Law Offices
170 S Green Valley Pkwy
Suite 280
Henderson, NV  89012

LCA Bank Corporation
3150 Livernois Road, Suite 300
Troy, MI  48083-0000

LCA Bank Corporation
PO Box 1650
Troy, MI 48099-1650

LCA Bank Corporation
Attn:  Thomas T. Billings,
Registered Agent
201 S. Main Street, Suite 1800
Salt Lake City, UT  84111

Counsel for Small Business Administration
Elan S. Levey, Esq.
Office of the United States Attorney
300 N. Los Angeles St., Ste. 7516
Los Angeles, CA  90012

1630542.1   7981 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**