JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@DanningGill.com*
ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
MICHAEL G. D'ALBA (State Bar No. 264403)
*mdalba@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Airport Van Rental, Inc. and
affiliated Debtors and Debtors in Possession

**FILED & ENTERED**

**JUN 17 2021**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY penning    DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>AIRPORT VAN RENTAL, INC., et al.,[1]<br><br>　　　Debtors and Debtors in Possession.<br><br>☐　Affects all Debtors<br><br>☒　Affects the following Debtor(s):<br><br>Airport Van Rental, Inc., a California corporation | Case No. 2:20-bk-20876-BB<br><br>Chapter 11 (Jointly Administered)<br><br>**ORDER GRANTING MOTION FOR (1) AUTHORITY TO OBTAIN CREDIT SECURED BY A FIRST-PRIORITY SECURITY INTEREST IN ALL ASSETS OF THE ESTATE PURSUANT TO DIP FINANCING, SETTLEMENT, ADEQUATE PROTECTION, AND PLAN SUPPORT AGREEMENT WITH 1ST SOURCE BANK, (2) APPROVAL OF SUCH AGREEMENT, (3) A GOOD FAITH DETERMINATION, AND (4) WAIVER OF STAY**<br><br>Date:　　June 16, 2021<br>Time:　　11:00 a.m.<br>Place:　　Courtroom 1539<br>　　　　　255 E. Temple St.<br>　　　　　Los Angeles, California |

---

[1] Pursuant to an order of the Court, this case is being jointly administered with four cases filed by the following affiliated entities: Airport Van Rental, Inc., a Georgia corporation, case no. 2:20-bk-20877-BB; Airport Van Rental, Inc., a Nevada corporation, case no. 2:20-bk-20878-BB; Airport Van Rental, LLP, a Texas limited liability partnership, case no. 2:20-bk-20882-BB; and AVR Vanpool, Inc., a California corporation, case no. 2:20-bk-20883-BB.

1651520.4  26988                                            1

On June 16, 2021, the Court conducted a hearing on the *Motion for (1) Authority to Obtain Credit Secured by a First-Priority Security Interest in All Assets of the Estate Pursuant to DIP Financing, Settlement, Adequate Protection, and Plan Support Agreement with 1st Source Bank, (2) Approval of Such Agreement, (3) a Good Faith Determination, and (4) Waiver of Stay* (the "Motion"), filed by Airport Van Rental, Inc., a California corporation ("AVR California"), the Honorable Sheri Bluebond, United States Bankruptcy Judge, presiding. Appearances were as noted on the record at the hearing.

The Court having considered the Motion and its accompanying Memorandum of Points and Authorities and Declaration of Yazdan Irani (the "Irani Declaration") (*docket no. 428*), AVR California's separate Request for Judicial Notice (*docket no. 429*), AVR California's separate *Statement Regarding Cash Collateral or Debtor in Possession Financing* filed pursuant to Local Bankruptcy Rule 4001-2 (*docket no. 430*), AVR California's separate notice of the hearing (*docket no. 436*), AVR California's separate declaration regarding notice of the hearing (*docket no. 437*), the response filed by Hitachi Capital America Corp. ("Hitachi") (*docket no. 467*), the objection filed by Dallas County, Texas, Harris County, Texas, and the Irving Independent School District (collectively the "Local Texas Tax Authorities") (*docket no. 468*), the response filed by the Official Committee of Unsecured Creditors (the "Committee") (*docket no. 469*), the response filed by H19 Sutton Leasing, LLC ("Sutton") (*docket no. 470*), and AVR California's omnibus reply (*docket no. 473*) (the "Reply"), having heard the oral arguments by counsel at the hearing, and the Court having stated findings of fact and conclusions of law on the record at the hearing, it is

**ORDERED THAT:**

1. The Motion is **GRANTED**. Any objections to entry of this order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby **DENIED** and overruled on the merits.

2. The *DIP Financing Agreement, Settlement Agreement, Adequate Protection Stipulation, and Plan Support Agreement* between AVR California and 1st Source Bank ("1st Source"), attached as Exhibit "1" to the Irani Declaration (the "Agreement"), with the additional provisions to be added pursuant to paragraph 5 of the agreement attached as Exhibit "C" to the

Reply, is **APPROVED**.  In the event of any conflict between the provisions of this order, on the one hand, and the provisions of the Agreement, the New Master Agreement, and other documents comprising the DIP Loan Documents, the 1st Source Loan Documents, and the AFC Loan Documents (as those terms are defined in the Agreement), on the other hand, the terms of this order shall control.

3.  AVR California is authorized to enter into the Agreement, the New Master Agreement (as defined in the Agreement), and any and all other documents contemplated thereby to effectuate the transactions contemplated by the Agreement.

4.  AVR California is authorized to perform all of its obligations under the Agreement and the New Loan Documents (as defined in the Agreement).

5.  Pursuant to the terms and conditions of the DIP Loan Documents (as defined in the Agreement), AVR California is authorized to borrow up to $1.8 million from 1st Source to acquire $2 million of new or used vehicles.  AVR California is authorized to use up to $200,000 of estate funds to pay 10% of the purchase price of such vehicles financed by 1st Source under the DIP Loan (as defined in the Agreement).

6.  AVR California is authorized to open and maintain "debtor in possession" checking, savings, money market, and similar bank accounts at 1st Source.  Once opened, and provided that 1st Source remains a depository approved by the United States trustee for Region 16 of the United States Trustee Program, AVR California is authorized to deposit the estate's funds in the account or accounts held at 1st Source.

7.  With respect to the DIP Loan, pursuant to 11 U.S.C. § 364(c)(2) and (d), AVR California is authorized to obtain the credit and incur the debt contemplated by the Agreement and the New Loan Documents secured by senior liens on all assets of AVR California and the estate (collectively the "Assets").  Effective and perfected upon the date of entry of this order, and without the necessity of the execution, recordation or filing by AVR California or 1st Source of any mortgages, security agreements, control agreements, pledge agreements, financing statements or similar documents or instruments, 1st Source's liens shall be valid, binding, enforceable, non-

avoidable, first-priority priming liens senior in priority to any and all other liens on the Assets, including but not limited to liens and purported liens of the following:

    (a)    U.S. Small Business Administration;

    (b)    Texas Comptroller of Public Accounts;

    (c)    Colorado Department of Revenue; and

    (d)    City of Commerce City, Colorado.

8. Notwithstanding the foregoing:

    (a)    the collateral securing AVR California's obligations under the DIP Loan shall not include AVR California's and the estate's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547 and 548 and the proceeds thereof;

    (b)    the collateral securing AVR California's obligations under the DIP Loan shall not include car wash equipment subject to the security interest of LCA Bank Corporation granted in Equipment Finance and Security Agreement # 134858-002; and

    (c)    the collateral securing AVR California's obligations under the DIP Loan shall not include any vehicles other than the vehicles directly financed by 1st Source under the DIP Loan.

9. The liens granted to 1st Source pursuant to paragraph 7 of this order shall not have priority over the San Diego County Regional Airport Authority's interest in a $8,708 cash security deposit provided by AVR California pursuant to its contract with that entity.

10. **Notwithstanding anything contained herein to the contrary,** the liens granted to 1st Source pursuant to paragraph 7 of this order shall not have priority over the liens securing ad valorem taxes owed to (a) Dallas County, Texas, (b) the Irving Independent School District, and (c) Harris County, Texas, and arising pursuant to sections 32.01 and 32.05 of the Texas Property Tax Code. AVR California is authorized and directed to pay the Local Texas Tax Authorities, on or before June 31, 2021, the full amount owed for 2020 and prior years, plus interest, which counsel for AVR California and the Local Texas Tax Authorities have advised the Court totals $53,068.07 if paid on or before June 31, 2021. AVR California is authorized and directed to pay the Local Texas Tax Authorities the full amount owed for 2021 on or before the date by which such

taxes must be paid under applicable state and local law.  This order does not constitute a determination of the amounts owed for 2021, and all rights of AVR California and the Local Texas Tax Authorities in that regard shall be determined in accordance with applicable state and local laws and procedures.  Provided that AVR California pays the amounts owed for 2020 and prior years, and is not in default of its obligations to pay amounts owed for 2021 on or before the date on which such taxes may be paid without penalty, nothing in this order shall require AVR California to segregate funds to pay the amounts that may be owed for 2021 so long as proceeds are generated from sales that are in the ordinary course of business.  Nothing in this order shall be construed to prejudice the Local Texas Tax Authorities' right to object to a sale motion and/or seek additional relief.

11. In accordance with and to the extent provided in the agreement attached as Exhibit "C" to the Reply, the liens granted to 1st Source pursuant to paragraph 7 of this order shall not have priority over the security interests of North Iowa Equity, LLC, in the segregated funds described more fully in that agreement.

12. The extension of credit and financial accommodations under the Agreement and the New Loan Documents is made in good faith.  The reversal or modification on appeal of this order's authorization under 11 U.S.C. § 364 to obtain credit, incur debt, and grant a senior lien in favor of 1st Source shall not affect the validity of the debt incurred, or the lien granted, to 1st Source, whether or not 1st Source knows of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of the lien, are stayed pending appeal.

13. The compromise between AVR California and 1st Source with respect to the amounts owed and the validity, priority and extent of security interests and liens granted pursuant to the 1st Source Loan Documents (as defined in the Agreement) is approved.

14. 1st Source's claim relating to the 1st Source Loan Documents shall be allowed as a secured claim in the aggregate amount of $5,663,189.61, consisting of a "1st Source 1-A Claim" in the amount of $4,368,650.00 and a "1st Source 1-B Claim" in the amount of $1,294,539.61.

15. 1st Source's security interests in and liens on the assets securing AVR's obligations under the 1st Source Loan Documents constitute valid, binding, enforceable, non-avoidable,

perfected security interests and liens on such assets.  Nothing in this paragraph is intended to or shall be construed as granting to 1st Source security interests in and liens on assets that do not constitute "Collateral" under the 1st Source Loan Documents.

16.   The compromise between AVR California and 1st Source with respect to the amounts owed and the validity, priority and extent of security interests and liens granted pursuant to the AFC Loan Documents (as defined in the Agreement) is approved.

17.   1st Source's claim relating to the AFC Loan Documents shall be allowed as a secured claim in the aggregate amount of $4,364,305.50, consisting of a "1st Source 2-A Claim" in the amount of $3,812,475.00 and a "1st Source 2-B Claim" in the amount of $551,830.50.

18.   1st Source's security interests in and liens on the assets securing AVR California's obligations under the AFC Loan Documents (as successor to AFC) constitute valid, binding, enforceable, non-avoidable, perfected security interests and liens on such assets.  In the addition or in the alternative, as of the Effective Date of the Agreement, AVR California, on behalf of itself and the estate, shall be deemed to have released, remised, relieved, waived, relinquished and discharged 1st Source of any and all actual or potential claims and causes of action for declaratory relief or to avoid a transfer of property or an obligation incurred by AVR California, and any recovery, subordination, or other remedies that could be brought by or on behalf of AVR California or the estate under the Bankruptcy Code or applicable non-bankruptcy law, including under section 544 and other sections in chapter 5 of the Bankruptcy Code.  Nothing in this paragraph is intended to or shall be construed as granting to 1st Source security interests in and liens on assets that do not constitute "Collateral" under the AFC Loan Documents.

19.   For the avoidance of doubt:  The security interests in and liens granted to 1st Source under this order, the Agreement, the DIP Loan, the New Master Agreement, the 1st Source Loan Documents, and the AFC Loan Documents do not include any security interests in and liens on (a) vehicles financed by lenders other than 1st Source or AFC or (b) the liquidation proceeds of such vehicles to the extent required to satisfy the liens and security interests granted to such lenders.  Also, the security interests in and liens granted to 1st Source under this order, the Agreement, the DIP Loan, the New Master Agreement, the 1st Source Loan Documents, and the

AFC Loan Documents do not include any security interests in and liens on (a) vehicles owed by entities that leased vehicles to AVR California or AVR Vanpool, Inc. ("AVR Vanpool"), or (b) the liquidation proceeds of such vehicles to the extent required to satisfy AVR California's or AVR Vanpool's obligations to the lessors under the applicable lease agreements.

20.    As to 1st Source, the automatic stay provided under 11 U.S.C. § 362(a) is terminated as to AVR California, the Estate and the Assets to the extent set forth in the Agreement. For the avoidance of doubt: Nothing in this paragraph grants 1st Source relief from stay to enforce any liens or purported liens on vehicles financed by lenders other than 1st Source or AFC, or vehicles owned by entities that leased vehicles to AVR California or AVR Vanpool.

21.    To the extent that this order terminates the automatic stay, this order is binding and effective in any future bankruptcy case commenced by or against AVR California. If any such case is filed, no further automatic stay shall arise in that case as to the Assets.

22.    1st Source's claim relating to the PPP Loan (as defined in the Agreement) shall be allowed as a general unsecured claim in the amount of $1,327,810.29, subject to being withdrawn or amended by 1st Source to reflect the amount that was due on the Petition Date (as defined in the Agreement) but not subject to forgiveness.

23.    Except as provided in the Agreement, the obligations of AVR California under the Agreement and the New Loan Documents shall not be discharged by the entry of an order confirming any plan in this case, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash on or before the effective date of such plan.

24.    Nothing in this order, the Agreement, the DIP Loan, the 1st Source Loan Documents, or the AFC Loan Documents affect, compromise or release personal guarantees given by Yazdan and Kimberly Irani, or any other person or entity, to any entity other than 1st Source.

25.    Except as to adequate protection payments made to 1st Source, nothing in this order, the Agreement, the DIP Loan, the 1st Source Loan Documents, or the AFC Loan Documents shall modify the Lender Adequate Protection Program approved by the Court in connection with AVR California's separate motion for authority to use cash collateral.

26. This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of title 11 of the United States Code.

27. The terms and conditions of this order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Federal Rules of Bankruptcy Procedure 4001(a)(3), 6004(h), or any other provision thereof.

###

Date: June 17, 2021

Sheri Bluebond
United States Bankruptcy Judge

1651520.4  26988

8